628 So.2d 1371 (1993)
David Lee COOPER
v.
STATE of Mississippi.
No. 91-KA-0889.
Supreme Court of Mississippi.
December 9, 1993.
Martin A. Kilpatrick, Greenville, for appellant.
Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and JAMES L. ROBERTS, Jr., and SMITH, JJ.
HAWKINS, Chief Justice, for the Court:
David Cooper, indicted, tried, and convicted in the Circuit Court of Washington County *1372 for the sale of cocaine, was sentenced to serve 30 years in the Mississippi Department of Corrections. Because the trial judge's exclusion of proffered evidence was reversible error, the cause is reversed and remanded for a new trial.
On November 27, 1990, Michael Diggs (Diggs), a paid confidential informant working as part of the special operations unit of the Greenville Police Department, fitted and equipped with a body wire transmitter, and furnished a $20 bill, embarked on a mission to purchase illegal drugs and secure evidence of the transaction. Two officers of the unit, Herbert Partlow (Partlow) and Earnest Blackley (Blackley), accompanied Diggs in a vehicle to his point of departure near the scene of the proposed drug purchase. They monitored the venture on their receiver. Diggs returned shortly with a small amount of cocaine and absent the $20. He accompanied the officers via their vehicle to the scene of the alleged drug purchase and pointed out Cooper as the culprit who made the sale. No arrest was made in order to protect the anonymity of Diggs while he purchased drugs from others. Cooper was arrested approximately five weeks later when the "roundup" of alleged violators occurred. At the time of his arrest, Cooper had no marked money or any other physical evidence in his possession linking him to the transaction.
Cooper requested and was granted a preliminary hearing. The case was dismissed. Cooper's case was subsequently presented to a grand jury resulting in an indictment.
At trial, the State based its case exclusively on the confidential informant's testimony. Officer Blackley testified:
Q Now officer, ... what we're talking about basically is the only eyewitness to this case being Diggs?
A Yes, sir.
Q No doubt about it?
A Right.
The State made no attempt to show voice identification of Cooper by use of the recorded sales transaction.
On cross-examination, Officer Partlow, when questioned about an investigation of Diggs relative to the disappearance of cocaine and money during the Greenville operation, testified:
Q During the time that Michael Diggs was there, is it not true that some cocaine and money came up missing from the special operations unit of the Greenville Police Department... .
A While he was there?
Q While he was working with the special operations unit?
A Oh, ... yeah, it did.
Diggs denied that he was the only person suspected of taking the missing drugs.
Cooper sought to impeach Diggs' credibility through testimony of Major Kenneth Winter, Chief of Criminal Investigations in the Greenville Police Department. The State objected to Major Winter's testimony on the ground that the issue of Diggs' truth and veracity was not properly before the court. Cooper then made the following proffer of Winter's testimony outside the jury's presence:
Q What's your job sir?
A I'm Chief of Criminal Investigations with the Greenville Police Department.
Q How long have you been with the Greenville Police Department, altogether?
A About fifteen years.
Q How long as Chief of the criminal division?
A A little over two years.
Q Sir, in your capacity of the Chief of the Criminal Division did you have occasion to become involved in investigations of certain drugs and money that were allegedly stolen or missing from the special operations unit?
A Yes I did.
Q Now when did that investigation begin, approximately, and when did it conclude, approximately?

*1373 A It began on December 26.
Q 1990?
A 1990. And it was concluded around the first of March of '91.
Q Now during that time period there were a number of people that were in the special operations units that were originally under investigation. As a matter of fact, everybody that was in there 
A That's correct.
... .
Q And during that time period was Michael Diggs working with the special operations unit as the undercover agent?
A He  he was working as a paid informant.
... .
Q There was a point in time that Michael Diggs was the lone person left as a suspect and he then was not used any longer as an undercover person with the special operations unit; is that correct?
A (No audible answer from the witness).
Q Do you want me to rephrase that?
A Yes, sir. I wish you would. I didn't quite understand all of it.
Q All right let me just  let me just lay it out black and white. Okay. Michael Diggs testified in here earlier that he was not  he was no longer used as an undercover agent, if you will, for the special operations unit in January, 1991, that he was terminated at that time  somewhere in January of 1991 because of the fact that there was a roundup in the particular  the particular narcotics cases that he had been operating in, that he had been used.
A Um hum.
....
Q Was there a roundup because Diggs was suspicious of all  of stealing cocaine or was there  was Diggs no longer used later on because there was a roundup? Are you seeing what I'm saying?
A Yes, sir. I'm aware that there was a drug roundup, and of course after the investigation, Diggs was no longer used.
Q Right.
A And he was no longer used by our department partly because of that investigation... .
....
Q Major Winter have you  did you ever have occasion to question Michael Diggs during this investigation?
A I did not personally question him, no.
....
Q Were you in charge of the investigation of it?
A I was... . [I]t was a two-sided investigation, an internal investigation and a criminal investigation. And I was overseeing the overall investigation.
Q And as a result of this investigation did you determine  can you tell us whether you believe him to be a truthful person?
BY MS. CHILDS: Object, Your Honor.
BY MR. KELLY: Judge, I thought that was right to the issue ... of whether or not he is a truthful person on the stand.
BY THE COURT: It's clear under the rules that what an individual thinks about another person's veracity is not admissible.
The court effectually sustained the State's objection to Cooper's proffer of Winter's testimony. The defense rested. The jury convicted Cooper.
Aggrieved, Cooper appeals maintaining the trial court erred reversibly in rejecting the proffered testimony offered for impeachment of Diggs.
M.R.E. 608(a) provides:

*1374 Opinion and Reputation Evidence of Character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. (Emphasis added.)
The official Comment to Rule 608 states: "Subsection (a) provides that the evidence may be produced in the form of an opinion or reputation."
In 3 Weinstein's Evidence § 608(01), pp. XXX-XX-XX (1993), we are told:
The theory underlying the use of evidence of character or conduct for impeachment purposes is that a person who possesses certain inadequate character traits  as evidenced in a variety of ways including that he has acted in a particular way  is more prone than a person whose character, in these respects, is good, to testify untruthfully. It follows from this hypothesis that evidence of his bad character, or conduct is relevant to prove that he is lying... .
... [C]redibility is often the crucial issue in a case, and character evidence, despite its flaws, "may still serve a purpose in calling to the jury's attention what might be an otherwise unknown deficiency of the witness and thus give the jury a more adequate basis for judging his testimony.
Section 608(04), pp. XXX-XX-XX of Weinstein's treatise also states the effect of Rule 608 as follows:
Attack on Character: Proof by Opinion
Rule 608 departs from previous practice in authorizing proof by opinion whenever proof could be made by reputation, a change endorsed by many commentators who agreed with Wigmore that the exclusion of opinion evidence was "historically unsound" and "unfortunate."
... . Witnesses may now be asked directly to state their opinion of the principal witness's character for truthfulness and they may answer for example, "I think X is a liar." The rule imposes no prerequisites conditioned upon long acquaintance or recent information about the witness; cross-examination can be expected to expose defects of lack of familiarity and to reveal reliance on isolated or irrelevant instances of misconduct or the existence of feelings of personal hostility towards the principal witness. (Emphasis added.)
M.R.E. 103(a)(2) provides, in part:
(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
... .
(2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
Cooper substantially complied with Rule 103.
The trial court erred in ruling that an opinion as to truth and veracity is not admissible. M.R.E.. 608(a). Its ruling interrupted a proffer which may have established that Winter had sufficient knowledge to express such an opinion, M.R.E. 602, that he had such an opinion, and in his opinion Diggs' character for truth and veracity was bad. Under the provisions of M.R.E. 103(a)(2), Cooper had the right to make his offer of proof. We, therefore, consider the effect of the court's action. The State's case hinged upon the credibility of the confidential informant, Diggs. While conviction for the sale of cocaine may rest on the uncorroborated testimony of an undercover agent, Doby v. State, 532 So.2d 584, 590 (Miss. 1988), we recognize that a paid informant is in some ways comparable to a "bounty hunter," having an interest in the outcome of the case. This salient distinction is important in our consideration of the effect of Cooper's offer of proof.
*1375 In Ashford v. State, 583 So.2d 1279 (Miss. 1991), we reversed a conviction resting solely on eyewitness identification by a paid confidential informant who described the cocaine seller as being several inches shorter and almost 50 pounds lighter than the defendant. In Ashford, we stated:
This discrepancy, coupled with the absence of the sort of evidence we customarily encounter in cases of this sort  the corroborating testimony of a professionally trained narcotics agent plus physical evidence in the form of marked MBN funds  can only yield a reasonable doubt of Ashford's guilt.
583 So.2d at 1282.
The sparsity of evidence by the State makes this case a close one. The record shows:
(1) Diggs, a confidential informant, was the only witness to the drug transaction.
(2) Diggs' testimony was not corroborated.
(3) Although Diggs said he delivered marked money to Cooper, none was recovered as evidence.
(4) There was no voice identification of Cooper through the body wire recorder worn by Diggs at the time of the alleged drug transaction. No reason was offered by the State why this information was not offered.
(5) No physical evidence other than Diggs' testimony linked Cooper to the alleged sale.
(6) The State's case rested entirely on the credibility of Diggs.
While the admissibility of evidence is largely within the discretion of the trial court and reversal may be had only where that discretion has been abused, the discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence. Johnston v. State, 567 So.2d 237, 238 (Miss. 1990).
In United States v. Davis, 639 F.2d 239 (5th Cir.1981), the United States Court of Appeals held that the district court in a criminal prosecution abused its discretion and committed reversible error of constitutional magnitude where it refused to permit defendant to present two character witnesses who would testify that the chief prosecution witness had a poor reputation for truthfulness and veracity in the community and that he was, in the excluded witnesses' opinions, not worthy of belief. The Court of Appeals stated:
The Federal Rules of Evidence allow the credibility of a nonparty witness to be impeached by reputation and opinion evidence of his character for untruthfulness. Fed.R.Evid. 608(a).
... .
... The purpose of the proffered evidence was to discredit the key government witness, Wooten, without whom the government would have had no case against the appellants... . No other character witnesses had been called to impeach Wooten's veracity. No other impeachment evidence, except for Wooten's own admission of prior felony convictions and the circumstances surrounding his cooperation with the prosecution, was admitted. No measurable delay would have resulted from the admission of the proffered evidence and no apparent prejudice to the prosecution would have occurred.
... .
We therefore hold that the district court exceeded its discretion in excluding the two character witnesses in this case and, in so doing, committed error of constitutional proportion. Faced with such error, we can allow the convictions to stand only if we find the error to be harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Because the role of the government's witness is so central and the jury's perception of his credibility so crucial to conviction, we cannot find the error to be harmless... .
639 F.2d at 244-45.
Under the circumstances existing in this case, the trial court's action in excluding the *1376 proffer of testimony offered to attack the informant's credibility became all important, perhaps crucial, to Cooper. The trial court's reasoning that "under the rules ... what an individual thinks about another person's veracity is not admissible" does not comport with the provisions of M.R.E. 608. The proffer exclusion was highly prejudicial to Cooper's fair trial rights, and constituted reversible error.
REVERSED AND REMANDED.
DAN M. LEE and PRATHER, P. JJ., and SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
PITTMAN, J., not participating.