## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00512-SCT

*TYREE HARRIS a/k/a "ESSAU" AND WILLIE
MAGEE a/k/a "JIM DANDY"*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/28/97 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | WALTHALL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN EDWARD JACKSON |
| | B. CALVIN COSNAHAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | DUNN LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/21/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

### SUMMARY

¶1. This appeal arose from a conviction of conspiracy to sell cocaine. Tyree Harris and Willie Magee were indicted for conspiracy to sell cocaine. Tyree Harris was indicted for sale of cocaine. Both were tried before a jury in the Walthall County Circuit Court. The jury returned a verdict of not guilty on the charge of sale of cocaine against Harris and verdicts of guilty for both Harris and Magee on the charge of conspiracy.

¶2. The court sentenced Tyree Harris to serve eighteen years, with the last two years on post release supervision and to pay a $5000.00 fine. The court sentenced Willie Magee to serve twelve years, with the last five years to be served on post release supervision and to pay a $5000.00 fine.

¶3. Both Harris and Magee timely appealed listing the following assignments of error.

**I. WHETHER OR NOT THE CIRCUIT COURT JUDGE COMMITTED REVERSIBLE**

**ERROR WHEN HE EXCLUDED EVIDENCE SUGGESTING THAT BARBARA VIRGIL HAD WORKED AS A PROSTITUTE**

**II. WHETHER OR NOT THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR WHEN HE ADMITTED THE TESTIMONY OF STANTON CRUMMEDY**

**III. WHETHER OR NOT CIRCUIT COURT JUDGE COMMITTED REVERSIBLE ERROR WHEN HE DENIED MAGEE'S MOTION FOR A DIRECTED VERDICT**

**IV. WHETHER OR NOT THE EVIDENCE REQUIRED A NOT GUILTY VERDICT**

**V. WHETHER OR NOT THE CIRCUIT COURT JUDGE COMMITTED REVERSIBLE ERROR WHEN HE DENIED HARRIS'S MOTION FOR NEW TRIAL.**

## FACTS OF THE CASE

¶4. Norman Goleman, a Metro Narcotics officer for Walthall County, set up a controlled cocaine buy using a confidential informant, Barbara Virgil. During the early morning hours of June 7, 1996, Goleman searched Virgil and Virgil's car and found no drugs or money. Goleman, Virgil and agent Craig Oster set out for Magee Badon Road to complete the buy. Goleman and Oster monitored Virgil's activities and the alleged buy, all of which were also recorded on audio tape. Goleman stated he had known both Harris and Magee for several years and could recognize their voices. Two other agents, Hicks and Vanderslice, recorded the transaction on video. The video and audio tapes were admitted into evidence.

¶5. Goleman testified to what he heard over the body transmitter worn by Virgil.[1] Magee approached Virgil's car and talked with Virgil. Virgil asked for Harris. In the course of conversation, Magee talked about someone in Silver Creek who had two thousand dollars worth of crack. Virgil continued to ask for Harris and at one point started to leave. Magee called Harris over. The two talked about drugs. A transaction took place and Virgil drove away.

¶6. Goleman testified he met Virgil at the post buy location where she gave him the crack cocaine she purchased. Goleman searched Virgil and found nothing. He testified Virgil had been given state funds to purchase the drugs. He also testified she was paid $150 for her work that night.

¶7. Goleman testified he packaged the crack cocaine and sent it to the Mississippi Crime Lab for testing.

¶8. On cross Goleman testified he sent Virgil out that night to buy from Harris and Magee's involvement was not expected. Goleman said from his observations, the audio tape and the video tape, Magee never touched any money or drugs.

¶9. Barbara Virgil testified she did not have any drugs or money in her possession before the buy took place. She testified she drove to Magee Badon Road and spoke with Magee. She asked Magee if anything was going on and Magee told her Harris had something. She and Magee talked for ten to fifteen minutes. Magee left the car to get Harris. Magee came back. Harris approached the car and sold her fifty dollars worth of crack.

¶10. During Virgil's testimony the audio and video tapes of the transaction were played for the jury. Virgil described the buy as it took place while the jury watched the video and heard the audio tape.

¶11. Stanton Crummedy testified he lived on Magee Badon road. He stated that he knew both Magee and Harris and that Magee would stop cars on Magee Badon Road and tell them "he know where the best stuff at." Magee would then take the people to Harris who would sell them cocaine.

¶12. On cross Crummedy failed to describe even one specific instance when Magee and Harris worked together to sell cocaine. He could not pinpoint a date or even a specific month when they worked together. He simply stated he knew they worked together. Crummedy also testified he was a cocaine user and at the time of the trial was charged with sale of cocaine. He further testified he had last used cocaine within two months of the trial.

¶13. Before Crummedy's testimony Magee objected to any testimony from Crummedy. The basis of Magee's objection was that Crummedy would not testify about the events of June 7, 1996, but rather would testify about other times he allegedly observed the defendants involved in drug activities. The State offered Crummedy's testimony to show a conspiracy existed. Because the conspiracy indictment stated the conspiracy occurred "on or before June 7, 1996", the trial judge overruled the objection to Crummedy's testimony as to what took place on or before June 7, 1996, but sustained the objection as to what took place after June 7, 1996. After Crummedy's testimony the judge instructed the jury that they were to disregard any testimony from Crummedy concerning events after June 7, 1996.

¶14. The State's final witness was Jacqueline Gardner. Gardner was accepted as an expert in the field of forensic science. Gardner testified she was employed by the Mississippi Crime Laboratory. She tested the substance sent to her by Agent Goleman and found it to be crack cocaine.

¶15. After the State rested, Magee and Harris moved for a directed verdict. The trial judge denied both motions and defense proceeded with its case in chief.

¶16. Harris's sister, Shequita Holmes, testified Harris was one of seven people living in her house. Harris slept on her couch and kept his things in her bedroom. She stated if he had a quantity of cocaine in her house she would have known about it and he did not. Holmes testified Harris had no job, no car and never had more than ten or fifteen dollars at a time. She stated he was not a drug user or drug dealer.

¶17. Holmes stated she knew both Virgil and Crummedy and that she had seen both smoking crack. She testified she did not consider either Virgil or Crummedy to be truthful. Holmes stated she heard Crummedy say he would do anything to stay out of jail again.

¶18. Magee's cousin, Lisa Harris, testified Virgil and Magee had a relationship and she had seen Virgil smoking crack several times.

¶19. Magee testified he was not involved in any conspiracy to sell drugs with Harris. He stated at the time of the alleged transaction he was a drug user. He said the fifteen minute conversation he had with Virgil involved his trying to get her to go somewhere else and buy drugs. He also said Harris did not sell drugs to Virgil on June 7, 1996. He said he knew Harris well and he was not a drug dealer.

¶20. Harris did not testify. The defendants rested.

¶21. Magee and Harris renewed their motions for directed verdicts. The Court denied both motions and heard closing statements.

¶22. After the jury was instructed and sent out to consider its verdict, the following exchange occurred.

BY THE COURT: Mr. Harris, I want to make sure you understand you have a right to testify.

BY THE DEFENDANT HARRIS: Yes, sir.

BY THE COURT: You chose not to testify?

BY THE DEFENDANT HARRIS: Yes, sir.

BY THE COURT: All right.

¶23. The jury returned a verdict of not guilty on the charge that Harris sold cocaine and verdicts of guilty on the charge of conspiracy to sell cocaine by both Harris and Magee. The court sentenced Tyree Harris to serve eighteen years, with the last two years on post release supervision and to pay a $5000.00 fine. The court sentenced Willie Magee to serve twelve years, with the last five years to be served on post release supervision and to pay a $5000.00 fine.

¶24. Both Magee and Harris moved for JNOV/new trial. The trial judge denied Magee's motion for a new trial. Harris filed an affidavit in which he alleged he was denied his Constitutional right to testify in his own behalf. Harris alleged he desired to testify, but his attorney refused his request to testify.

¶25. The trial judge held a hearing to determine the substance of Harris's allegations. Harris testified he repeatedly told his attorney he wanted to testify, but his attorney told him he would not let him take the stand. Harris's attorney testified he did tell Harris he had a right to testify or not testify and that the choice was up to him. He stated he and Harris discussed the positive and negative aspects of his testifying and decided Harris should not take the stand.

¶26. The trial judge asked Harris, Harris's attorney and the court clerk if the jury had time to get to the jury room and begin deliberations before the judge asked Harris if he wanted to testify. All three stated the jury had just left the room.

¶27. The judge then stated he was satisfied Harris was adequately advised of his Constitutional right to testify. The judge further stated

I think that I did err in not advising him sooner in the trial, but I think that based on the testimony I have heard today, and the fact that had he expressed a desire to testify, I think it was obvious that the case would have been -- the jury would have been brought back in and he would have been allowed to testify. I do not find that there has been a material or any kind of violation of this man's Constitutional rights; that he was afforded his right to testify and after conferring with his attorney he chose to remain silent based on his Fifth Amendment right, and the motion for a new trial is overruled.

¶28. Magee and Harris timely appealed.

### DISCUSSION OF LAW

**I. WHETHER OR NOT THE CIRCUIT COURT JUDGE COMMITTED REVERSIBLE ERROR WHEN HE EXCLUDED EVIDENCE SUGGESTING THAT BARBARA**

**VIRGIL HAD WORKED AS A PROSTITUTE**

¶29. The standard of review for admission of evidence in a criminal case is abuse of discretion. *Peterson v. State*, 671 So. 2d 647, 655-56 (Miss. 1996). Magee and Harris argue the judge abused his discretion in granting the State's motion in limine to exclude evidence of Virgil's prior sexual conduct, namely prostitution and soliciting.

¶30. In a motion in limine, the State asked the judge to prohibit the defense from "making any references or statements, explicit or implicit whatsoever, referencing sexual conduct of the State's witness Barbara Virgil." The State expected the defendants to bring in testimony that Virgil solicited Magee and Harris for prostitution. The State argued all such references would be inadmissible under Mississippi Rule of Evidence 608 because whether Virgil was a known prostitute or had ever solicited Harris or Magee would not be probative of her character for truthfulness or untruthfulness.

¶31. The defendants responded by arguing Virgil's background as a prostitute was probative of her character for truthfulness or untruthfulness. The defendants intended to show that Virgil solicited Harris and Magee and was spurned by both and also that at one time Virgil had a relationship with Magee. The defendants also contended Virgil's participation in ongoing criminal acts should be something for the jury to consider when judging her credibility.

¶32. The trial judge held evidence of Virgil's prior sexual conduct was not admissible under Mississippi Rule of Evidence 608. The judge reasoned under the Mississippi Rules of Evidence, specific instances of misconduct of a witness may not be proved by extrinsic evidence. Prior instances of misconduct may be inquired into on cross-examination in the discretion of the court if those instances are probative of truthfulness or untruthfulness. The judge determined Virgil's prior sexual activity was a collateral issue and not related to the charges against Magee and Harris. Although he did not specifically state Virgil's prior conduct was not related to truthfulness or untruthfulness, the judge apparently reached that conclusion and found such evidence inadmissible under 608.

¶33. The judge then considered the admissibility of Virgil's conduct. In examining Virgil's prior conduct under Rule 403, the judge weighed the prejudicial/probative value of Virgil's prior conduct and found such evidence to be more prejudicial than probative. As a result of this finding, the judge excluded all testimony about Virgil's prior sexual conduct. After further discussion, the judge stated he would allow testimony about Virgil's prior drug use if the State opened the door to the testimony.

¶34. In *Brent v. State*, 632 So. 2d 936, 943-45 (Miss. 1994), this Court described proper impeachment of a witness's character by use of specific acts of conduct.

> [Mississippi Rule of Evidence 608(b)] provides discretionary authority for the trial judge to permit upon cross-examination, inquiry into specific acts of misconduct of a witness "if probative of truthfulness or untruthfulness," and concerning a witness's character for "truthfulness or untruthfulness." The comment to the rule notes that this exception goes beyond pre-rules decisions, and allows "impeachment by specific acts which are something other than criminal convictions when the character trait of truthfulness of the witness being examined is under attack."
>
> . . . .
>
> The rule first tells us that specific instances of a witness's conduct for the purpose of either attacking

or supporting his credibility which did not result in a conviction "may not be proved by extrinsic evidence." As noted, this has always been the rule in this state. Rule 608(b) continues, however, to inform us that specific instances of past conduct not resulting in a conviction may "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness ..."

. . . .

The proffered conduct must be such as to reflect upon the witness's character for truthfulness. *If the past conduct did not involve lying, deceit, or dishonesty in some manner, it cannot be inquired into on cross-examination. The trial court has no discretionary authority to permit inquiry by cross- examination into conduct not involving truthfulness.*

**Brent**, 632 So. 2d at 943-44 (citations omitted) (emphasis added).

¶35. In the case *sub judice* the trial court found that Virgil's prior conduct -- prostitution -- did not involve truthfulness or untruthfulness. After this determination, the trial court had no discretion to permit the defendants to use this evidence to impeach Virgil.

¶36. Magee also asserts he was denied the opportunity to question Virgil about her drug use. The judge stated in his ruling on the motion in limine that Virgil could be questioned about her drug use if the State opened the door. A review of the record shows Virgil was questioned about drug use by the defendants.

¶37. Magee further argues the trial judge erred in not allowing him to make an offer of proof concerning Virgil's drug use and character for truthfulness or untruthfulness. Magee cites **Cooper v. State**, 628 So. 2d 1371 (Miss. 1993), and argues the absence of an offer of proof requires reversal. This Court in **Cooper** held an assignment of error regarding exclusion of evidence may not be based on a ruling that admits or excludes evidence unless a substantial right of the party is affected, and unless there is an offer of proof. Exclusions of evidence require that, "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." **Cooper**, 628 So. 2d at 1374(quoting M.R.E. 103(a)(2)).

¶38. Several problems with Magee's argument exist. First, there is nothing in the record to indicate that Magee asked to make an offer of proof. Second, Magee and Harris both provided the judge with the substance of what their witness would testify during arguments over the motion in limine. Finally, from the context of the questions asked by Magee and Harris, the substance of the evidence was apparent.

¶39. The trial judge did not abuse his discretion in granting the State's motion in limine to exclude evidence of Virgil's prior conduct. This assignment has no merit.

### II. WHETHER OR NOT THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR WHEN HE ADMITTED THE TESTIMONY OF STANTON CRUMMEDY

¶40. Magee and Harris argue the trial judge committed reversible error when he denied the defendants' motion to prevent Crummedy from testifying and allowed the State to examine Crummedy. The defendants argue Crummedy testified only to prior criminal acts committed by Magee and Harris, those being drug sales similar to the crime charged. The defendants also argue Crummedy testified to acts that took place after June 7, 1996, that were outside the time period charged in the indictment. Magee and Harris also

stated Crummedy's testimony was more prejudicial than probative and should have been excluded. Finally, the defendants argue the judge failed to properly instruct the jury on the use of Crummedy's testimony.

¶41. The State responds by arguing Crummedy's testimony provided circumstantial evidence of a conspiracy between Magee and Harris. No prejudicial/probative balancing test was necessary under Mississippi Rule of Evidence 403 because Crummedy's testimony was evidence of the conspiracy itself, not evidence of past acts as contemplated under Mississippi Rule of Evidence 404.

¶42. For there to be a conspiracy, there must be a recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purposes. The "conspiracy agreement need not be formal or express, but it may be inferred from the circumstances, particularly by declarations, acts and conduct of the alleged conspirators. Furthermore, the existence of a conspiracy, and a defendant's membership in it, may be proved entirely by circumstantial evidence." *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996)(quoting *Nixon v. State*, 533 So.2d 1078, 1092(Miss1987)).

¶43. Mississippi Rule of Evidence 404(b) provides

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Miss. R. Evid. 404(b).

¶44. Harris and Magee assert Crummedy's testimony was offered to show the two defendants acted in conformity therewith, that is they sold crack cocaine on the occasions Crummedy observed them. The State argues Crummedy's testimony falls outside of 404(b) because the testimony is simply circumstantial evidence that Magee and Harris were part of a conspiracy to sell cocaine and such testimony is allowable under the reasoning in *Franklin*. The State's argument on this point is well taken. From a review of the argument on the motion to exclude, it is apparent the State sought to use Crummedy to provide circumstantial evidence of a conspiracy. Crummedy's testimony supported the State's theory that Harris and Magee sold cocaine by having Magee flag down the cars and then signal Harris to sell the cocaine.

¶45. Even if relevant evidence is otherwise admissible, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Miss. R. Evid. 403. "Relevant evidence may be inadmissible when its probative value is outweighed by its tendency to mislead, to confuse, or to prejudice the jury." Miss. R. Evid. 403 cmt. Rule 403 has been repeatedly described by this Court as the "ultimate filter through which all otherwise admissible evidence must pass." *Watts v. State*, 635 So. 2d 1364, 1368 (Miss. 1994)(quoting *Jenkins v. State*, 507 So.2d 89, 93 (Miss.1987)).

¶46. According to the judge's ruling, Crummedy's testimony was to relate only to events occurring on or before June 7, 1996. Although Crummedy testified he saw Harris and Magee work together before June 7, 1996, later in his testimony Crummedy admitted he did not know if the events he described took place before or after June 7, 1996. Crummedy also had a great deal of trouble remembering a specific instance when he saw Harris and Magee work together. The best Crummedy could do was state he knew Harris and Magee worked together selling cocaine.

¶47. After Crummedy's testimony, Magee moved to have his statements excluded because Crummedy

could not testify when his observations took place. Magee argued if Crummedy could not definitively state if his observations of Magee and Harris took place before or after June 7, 1996, then the jury should not be allowed to consider Crummedy's testimony. The judge denied Magee's motion and instructed the jury

> ladies and gentlemen of the jury, the testimony of the last witness by prior rulings of the court was to relate to incidents that occurred prior to June 7th, which is the date that is alleged in the indictment. Any testimony that he gave relating to incidents that occurred after June 7th shall be disregarded by you. Disregard it and do not take it into consideration in rendering your verdict. You are to only consider testimony that related to days prior to June 7th, or up to and including June 7, 1996.

¶48. Mississippi Rule of Evidence 105 requires a limiting instruction when evidence is admissible for one purpose but not admissible for another purpose. Miss. Rule Evid. 105; *Knowles v. State*, 708 So. 2d 549, 557 (Miss. 1998).

¶49. The trial judge did not abuse his discretion in finding the probative value of Crummedy's testimony was not outweighed by its tendency to mislead, confuse, or prejudice the jury. The trial judge's instruction to the jury was sufficient to limit the jury's consideration to only those events that took place before June 7, 1996. Matters of weight and credibility of evidence are to be resolved by the jury. *Jones v. State*, 669 So. 2d 1383, 1388 (Miss. 1995). With a proper limiting instruction, the jury could give Crummedy's testimony its due weight.

¶50. This assignment has no merit.

### III. WHETHER OR NOT CIRCUIT COURT JUDGE COMMITTED REVERSIBLE ERROR WHEN HE DENIED MAGEE'S MOTION FOR A DIRECTED VERDICT

### IV. WHETHER OR NOT THE EVIDENCE REQUIRED A NOT GUILTY VERDICT

¶51. Magee and Harris argue the trial judge erred in not granting a directed verdict at the close of the State's case. They further argue the evidence presented at trial does not warrant a verdict of guilty.

¶52. Requests for a directed verdict and motions for JNOV implicate the sufficiency of the evidence. The standard of review for the legal sufficiency of the evidence is well-settled:

> [W]e must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the case for the prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Franklin*, 676 So. 2d at 288 (quoting *Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987)).

¶53. "When reviewing the sufficiency of the evidence, this Court looks at the lower court's ruling 'on the last occasion when the sufficiency of the evidence was challenged.' " *Ballenger v. State*, 667 So. 2d 1242, 1252 (Miss. 1995)(quoting *Green v. State*, 631 So. 2d 167, 174 (Miss. 1994)), *cert. denied*, 518 U.S.

1024 (1996).

¶54. After a review of the record it is clear that reasonable jurors could find beyond a reasonable doubt that Magee and Harris were guilty of conspiracy. The testimony of Goleman, Virgil, Crummedy and Magee himself supports the jury's finding. The video and audio tape of the transaction also lend support to this result. The trial court did not err in denying the motions for a directed verdict and JNOV.

¶55. This assignment has no merit.

## V. WHETHER OR NOT THE CIRCUIT COURT JUDGE COMMITTED REVERSIBLE ERROR WHEN HE DENIED HARRIS'S MOTION FOR NEW TRIAL

¶56. Harris argues he is entitled to a new trial because the judge did not timely advise him of his Constitutional right to testify in his own behalf. Harris asserted in a motion for a new trial that his attorney refused his request to testify. The judge held a hearing to determine the substance of Harris's allegations.

¶57. After the hearing the judge determined there was "no material or any kind of violation of [Harris's] Constitutional rights." The judge further found Harris's attorney fully informed him of his right to testify and after consideration, Harris chose not to do so. The judge stated "I think I did err in not advising him sooner in the trial," but if Harris had expressed a desire to testify at the trial he could have done so before the jury began deliberations and would have suffered no prejudice.

¶58. Although Harris does have a Constitutional right to testify in his own behalf, *Rock v. Arkansas*, 483 U.S. 44, 49 (1987), that right can be waived.

¶59. The trial judge found Harris made an informed choice not to testify. The judge further found even though the court should have informed him of his right to testify sooner, if Harris had expressed a desire to testify at the close of the case, the jury could have been called back in and Harris would have suffered no prejudice.

¶60. This assignment has no merit.

## CONCLUSION

¶61. The trial judge did not abuse his discretion in granting the State's motion to exclude evidence of Virgil's prior sexual conduct nor did the judge abuse his discretion in allowing the jury to consider Crummedy's testimony. Based on a review of the record, sufficient evidence exists to support the jury's verdict of guilty on charge of conspiracy for Harris and Magee.

¶62. The judge did not err denying Harris's motion for a new trial. The record supports the judge's finding that Harris was fully informed of his right to testify and that he made an informed decision not to testify in his own behalf.

¶63. For these reasons the decision of the court below is affirmed.

¶64. **TYREE HARRIS: CONVICTION OF CONSPIRACY TO DISTRIBUTE COCAINE AND SENTENCE TO SERVE EIGHTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE LAST TWO YEARS TO BE SERVED ON POST RELEASE SUPERVISION, AND TO PAY A FINE OF $5,000 COURT COSTS AND**

**ATTORNEY FEES AFFIRMED. WILLIE MAGEE: CONVICTION OF CONSPIRACY TO DISTRIBUTE COCAINE AND SENTENCE TO SERVE TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE LAST FIVE YEARS TO BE SERVED ON POST RELIEF SUPERVISION, AND TO PAY A FINE OF $5,000 COURT COSTS, ATTORNEY FEES AND TO GET A G.E.D. AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., ROBERTS, SMITH AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J.**

**BANKS, JUSTICE, DISSENTING:**

¶65. Because the holding of the majority is contrary to prior case law, I respectfully dissent.

¶66. This Court in ***Wright v. State***, No. 96-KP-00279-SCT (Miss. Dec. 31, 1998), held that a witness's testimony was irrelevant where the witness was unable to testify that the events he observed occurred on the date in question. In this case Crummedy testified that he did not know whether the events he described occurred before or after June 7, 1996 or at any time around that date. Thus, based on the holding in *Wright* Crummedy's testimony was irrelevant to the issue.

¶67. I also cannot agree with the majority's holding that the trial court's limiting instruction - admonishing the jury to not consider those events which occurred after June 7, 1996 - was sufficient to remove any prejudice. In my opinion the jury had no way of determining what events occurred after the date in question where the witness testified that he himself did not know whether the events described occurred before or after that date.

¶68. Accordingly, I respectfully dissent.

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

1. Neither of the defendants objected to this testimony.