THOMAS, J.,
for the Court:
¶ 1. Troy White appeals his conviction of sale of cocaine within 1,500 feet of a church raising the following issues as error:
I. A. THE EVIDENCE IS INSUFFICIENT TO SUPPORT CONVICTION PURSUANT TO THE INDICTMENT AND RELEVANT LAW. THE LOWER COURT ERRED IN NOT GRANTING A JUDGMENT NOTWITHSTANDING THE VERDICT PURSUANT TO RULE 50(B) OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE.
B. THE LOWER COURT ERRED IN NOT GRANTING A NEW TRIAL BASED ON JURY MISCONDUCT.
C. CONFIDENTIAL INFORMANT, LEVON TURNER, WAS NOT A RELIABLE WITNESS.
D. THE LOWER COURT ERRED BY ALLOWING THE AUDIO TAPE AND ILLEGAL SUBSTANCE INTO EVIDENCE.
*1150 E. THE TRIAL COURT ERRED IN ITS RULING THAT AN OPINION AS TO THE TRUTH AND VERACITY OF THE CONFIDENTIAL INFORMANT IS NOT ADMISSIBLE.
II. THE STATE’S USE OF PEREMPTORY STRIKES ON SIX BLACK JURORS WAS RACIALLY MOTIVATED.
III. THE LOWER COURT ACTED IMPROPER BY SENTENCING APPELLANT TO 60 YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS.
¶ 2. Finding error, we reverse and remand.
FACTS
¶ 3. On December 23, 1996, Levon Turner acted as an undercover confidential informant for the Hazlehurst Police Department in Copiah County, Mississippi. Officer Ron Crew testified that he searched Turner, gave him sixty dollars of county money, and wired Turner with a body mike. Crew drove Turner to a residential area and dropped him off. Turner first went to another person’s home, but when that individual was not in, Turner went to Troy White’s residence. When Turner arrived he was told by another individual that White was not home, but would be back soon. Turner waited. When White arrived, Turner asked him for “fifty.” White gave Turner three rocks which later were tested by the crime lab and determined to be crack cocaine. Turner met Officer Crew at a predetermined location. Officer Crew, Police Chief Ellis Stuart, and Turner went back to the police station. Turner was searched again, custody was taken of the crack cocaine, custody was taken of the unspent funds, the transmitters and recorders were recovered, and Turner gave a statement of facts.
¶ 4. The confidential informant, Turner, testified to the facts as they are stated above. On cross-examination, Turner testified that he was a cocaine user, as recently as a few months before the trial. He admitted that he did not tell Officer Crew that he was using drugs while he was a confidential informant and that he was convicted of welfare fraud during the time he was a confidential informant.
¶ 5. Troy White testified in his own defense. He stated that he was at his sister’s watching Monday Night Football at the time of the alleged cocaine sale.
¶ 6. George Turner, the confidential informant’s brother, testified for the defense. George testified that his brother was not a truthful person. He testified that his brother was a cocaine user, had been committed to a rehabilitation clinic, and had been committed to the State Mental Hospital.
¶ 7. Gwen Banks testified that she lived on the other side of the duplex where Troy White resided on December 23, 1996. Banks testified that the walls of the duplex were very thin and that she would be able to hear voices, the television, or any noise coming from White’s complex. She stated that she and White watched each other’s apartments whenever one of them would go out. Banks testified that White was not home the night of December 23, 1996, because she and her friend were waiting for White because it was the friend’s birthday and they wanted to celebrate with him.
¶ 8. Dara Hamilton testified that she and White were over at White’s sister’s house from 5:30 p.m. to 11:00 p.m. She remembered the date specifically because she was supposed to be a bridesmaid in her friend’s wedding the day before and the groom called off the wedding just hours before the ceremony.
¶ 9. On rebuttal, the State called Ellis Stuart, who was director of public safety for the City of Hazlehurst, on the evening in question. Stuart testified that he was with Officer Crew providing surveillance for Levon Turner. On December 23, 1996, *1151 Stuart saw Turner enter a duplex, which Stuart had been informed was the duplex in which Troy White resided.
¶ 10. The jury agreed with the State’s version of events and found Troy White guilty of the sale of cocaine. Since White was indicted and convicted under section 41-29-139 of the Mississippi Code, as amended, which prohibits the selling of a controlled substance within 1,500 feet of a church and permits the trial court to give an enhanced sentence to a defendant convicted of such an offense, the trial court gave White a sixty-year sentence. From this conviction and sentence, White appeals.
I.
A.
THE EVIDENCE IS INSUFFICIENT TO SUPPORT CONVICTION PURSUANT TO THE INDICTMENT AND RELEVANT LAW. THE LOWER COURT ERRED IN NOT GRANTING A JUDGMENT NOTWITHSTANDING THE VERDICT PURSUANT TO RULE 50(B) OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE.
¶ 11. We are reversing on other grounds. We address this issue because if White were successful on this issue we would be compelled to reverse and render.
¶ 12. White argues that he was entitled to a JNOV. A motion for a JNOV challenges the sufficiency of the evidence supporting a guilty verdict. Butler v. State, 544 So.2d 816, 819 (Miss.1989). We review the evidence on the last occasion when the sufficiency of the evidence was challenged before the trial court, at the time of White’s motion for JNOV. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 13. Where a defendant moves for JNOV, the trial court considers all of the credible evidence consistent with the defendant’s guilt, giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from this evidence. Id. To test whether the evidence was sufficient all the evidence consistent with White’s guilt must be accepted as true together with any reasonable inferences that may be drawn from the evidence. Gossett v. State, 660 So.2d 1285, 1293 (Miss.1995). This Court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could not find the accused guilty. Wetz v. State, 503 So.2d 803, 808 n. 3 (Miss.1987).
 ¶ 14. White argues that he was unfairly denied a JNOV because the State’s case rested entirely on the testimony of the confidential informant; therefore, the prosecution’s case was based entirely on circumstantial evidence. White misunderstands the law. Evidence is circumstantial when the prosecution can produce neither an eyewitness nor a confession/statement by the defendant. Ladner v. State, 584 So.2d 743, 750 (Miss.1991). In the present case, the prosecution’s case included an eyewitness account of the sale. Therefore, the prosecution’s case did not rest solely upon circumstantial evidence, but was supported by direct evidence.
¶ 15. Here the evidence was sufficient to support the jurors’s judgment. The confidential informant, Turner, testified that he went to the house of Troy White and purchased fifty dollars worth of cocaine. Turner was wired with a transmitter by Crew who overheard via transmitter the conversations of Turner and the person Turner kept calling “Troy.” Crew testified that he measured between the church and the residence and it was 524 feet. The jurors resolved fact questions reasonably in favor of the State, and the verdict in the case was not contrary to the evidence. Accordingly, we reject White’s first allegation of error.
*1152 I. D.
THE LOWER COURT ERRED BY ALLOWING THE AUDIO TAPE AND ILLEGAL SUBSTANCE INTO EVIDENCE.
¶ 16. White argues that the prosecution failed to make a showing of manner of preservation of recording, failed to identify the speakers, and failed to show that testimony elicited was voluntarily made without any kind of inducement.
¶ 17. The State may introduce a recording of a drug transaction during trial. See Doby v. State, 557 So.2d 533, 541 (Miss.1990); Middlebrook v. State, 555 So.2d 1009, 1011-12 (Miss.1990). First, as a condition precedent to the admittance of this evidence, the tape must meet the requirement of authentification, under Mississippi Rule of Evidence 901. Doby, 557 So.2d at 541; Middlebrook, 555 So.2d at 1011-12. If a recording is properly authenticated pursuant to Rule 901(a) and relevant under 401 of the Mississippi Rules of Evidence, it is admissible. Middlebrook, 555 So.2d at 1011-12. The trial judge has broad discretion over the admissibility of evidence and will only be reversed for an abuse of discretion. Coleman v. State, 697 So.2d 777, 784 (Miss.1997).
¶ 18. “The State may prove that the tape recording is, in fact, a recording of [White] by ‘opinion based upon hearing the voice at any time under the circumstances connecting it with the alleged speaker.’ ” Martin v. State, 724 So.2d 420, 422 (Miss.Ct.App.1998) (quoting Stromas v. State, 618 So.2d 116, 119 (Miss.1993) (quoting M.R.E. 901(b)(5))). This was not done in this case. In the instant case the prosecution' failed to ask Officer Crew to identify the speakers on the tape, and it is of no doubt that Crew could not have identified White as one of the persons talking on the tape, as he was not party to the conversation. Officer Crew testified and described the manner in which the recording was made. He testified that he had listened to the tape and the tape acpu-rately reflected what he had heard over the body wire. Crew’s failure to identify the voices on the tape would not render the tape inadmissible, if it was offered to prove that a drug transaction had indeed taken place; however, the tape became inadmissible to prove White’s involvement. The trial court abused its discretion in admitting the tape into evidence to prove White’s involvement in the drug transaction for failure of the prosecution to properly authenticate the tape with the testimony of Turner.
I. E.
THE TRIAL COURT ERRED IN ITS RULING THAT AN OPINION AS TO THE TRUTH AND VERACITY OF THE CONFIDENTIAL INFORMANT IS NOT ADMISSIBLE.
¶ 19. During White’s trial the trial judge in no way inhibited the defense from extensively questioning the confidential informant, Turner, as to his reliability. White was allowed to examine George Turner, Levon Turner’s brother, on whether he felt Levon was a truthful person. What White is arguing is that the trial judge erred by not allowing him to call a witness, Carlos Green, who would testify about Turner’s reliability. The State does not address this issue.
¶ 20. Carlos Green testified in a proffer at the trial of Michael White, brother of Troy White. Green testified that Turner made certain allegations in a- statement. This statement said that Green had directed Turner to a man named Percy’s house so he could purchase drugs at the residence. Green testified that the statement was untrue. Charges were originally brought against Green but these charges were later dismissed.
¶ 21. Prior to Troy White’s trial, the trial court found that Green’s situation was irrelevant to White’s case because it dealt with an entirely different matter. The trial court stated what was important was *1153 whether or not Turner purchased cocaine from Troy White. White was not allowed to call Green as a witness, but he was allowed to proffer the above testimony to this Court.
¶22. A witness’s credibility may be impeached under M.R.E. 608(a) with evidence that he has a character for untruthfulness. Indeed, it is reversible error to refuse to allow a defendant to call a character witness to impeach the character for truth and veracity of an important prosecution witness. Cooper v. State, 628 So.2d 1371, 1376 (Miss.1993).
¶23. The witness’s credibility can only be attacked after the witness testifies. M.R.E. 608 cmt. The impeachment may be accomplished by introducing evidence of a witness’s character for untruthfulness through the testimony of a second witness. M.R.E. 608 cmt. The impeaching witness may testify to his opinion of the prosecution witness’s character for untruthfulness or may testify to the prosecution witness’s reputation for untruthfulness. M.R.E. 608.
¶ 24. In Cooper v. State, 628 So.2d 1371 (Miss.1993), the Court reversed the trial court where the trial judge excluded testimony regarding the credibility of the confidential informant. In Cooper, the State’s case hinged upon the credibility of the confidential informant, Michael Diggs. Id. at 1373. The Cooper case is analogous to the case at hand because as in White’s case, Diggs, the confidential informant, was the only witness to the drug transaction; Diggs’s testimony was not corroborated; although Diggs said he delivered marked money to Cooper, none was recovered as evidence; there was no voice identification of Cooper through the body wire recorder worn by Diggs at the time of the alleged drug transaction; no physical evidence other than Diggs’s testimony linked Cooper to the alleged sale; and the State’s case rested entirely on the credibility of Diggs. Id. at 1374. The Court found that “the trial court’s action in excluding the proffer of testimony offered to attack the informant’s credibility became all important, perhaps crucial, to Cooper.” Id. at 1375-76. “The proffer exclusion was highly prejudicial to Cooper’s fair trial rights, and constituted reversible error.” Id. at 1376.
¶ 25. “While the admissibility of evidence is largely within the discretion of the trial court and reversal may be had only where that discretion has been abused, the discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence.” Id. at 1375 (citing Johnston v. State, 567 So.2d 237, 238 (Miss.1990)). Because the role of impeaching Turner’s credibility was so central and the jury’s perception of his credibility so crucial to White’s conviction, we cannot find the error of foreclosing White’s attempt at impeachment of Turner to be harmless. We find the trial judge abused his discretion in this instance.
III.
THE LOWER COURT ACTED IMPROPER BY SENTENCING APPELLANT TO 60 YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS.
¶ 26. To facilitate the trial court on remand we will also address White’s contention that the trial court acted improperly in sentencing him to sixty years, the maximum provided by law.
¶ 27. White received the maximum sentence which he could under Miss.Code Ann. § 41 — 29—139(b)(1) (Rev.1993), which was doubled under Miss.Code Ann. § 41-29-142(1) because the sale took place within 1,500 feet from a church building. By applying the maximum sentence allowed under both statutes, neither of which carry a mandatory sentence, White’s penalty for the offense is sixty years in prison. White argues that the sixty year sentence for a first time offender is excessive and constitutes cruel and unusual punishment. Troy White is thirty-two years old and a sixty *1154 year sentence is tantamount to a life sentence since White will be ninety-two years of age at the completion of the sentence. Moreover, White asserts that the district attorney recommended a sentence of twelve years which represented an appropriate sentence for the offense in the opinion of the district attorney.
¶ 28. We feel compelled to address White’s last issue due to the recent Mississippi Supreme Court decision of Davis v. State, 724 So.2d 342 (Miss.1998). In Davis the Court discussed Miss.Code Ann. § 41-29-142, enhanced penalties for the sale of a controlled substance within 1,500 feet of a church, and whether the maximum penalty could be considered cruel and unusual punishment. The trial judge in White’s case is the same as the trial judge in the Davis’s case.
¶ 29. Melissa Davis argued that her sentence of sixty years for selling two rocks of crack cocaine for $40, within 1,500 feet of a school, was cruel, inhuman, and disproportionate when viewed against similar sentences given for like offenses. Id. at (¶ 8). The Court stated that it had little before it to explain the sentence and Davis chose not to offer evidence in her defense. Id. at (¶ 9). The Court conceded that a trial judge has broad discretion in sentencing; however, the Court stated, “one cannot but be concerned about the severity of the sentence in this case in the absence of anything appearing in the record which reflects egregious circumstances.” Id. at (¶ 10).
¶ 30. The Court stated, “[i]t is unfortunate that we have little before us to explain this sentence .... we are not told how many prior offenses are in her history or the nature or punishment given for her earlier transgression or transgressions.” Id. at (¶ 9). Because of what the Court believed was a “lack of justification for such a sentence on the face of the record,” the Court remanded the case for resen-tencing finding that they did not have enough information before them to determine if the trial judge abused his discretion. Id. at (¶ 17).
¶ 31. If White’s case on remand ends in a conviction, we remind the trial judge of this recent Mississippi Supreme Court decision and the necessity to provide a complete record when sentencing to assist an appellate court in case the party appeals. We note that White’s sentence appears to be tantamount to a lifetime sentence, given the number of years imposed. Although not exactly on point, as a corollary, our Supreme Court has held that, except in mandatory cases, the trial court cannot impose a life sentence; only the jury has that power.
¶ 32. We need not address White’s other assignments of error, as we are reversing and remanding for the reasons cited herein.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.
BRIDGES, J., NOT PARTICIPATING.