SMITH, Justice.
A grand jury of Covington County indicted appellant, Talmadge (Billy) Carr, jointly with Jesse White and Cecil Sessums, charging them with having committed an assault and battery upon one Rogers by shooting him with a pistol, intending to murder him. The Circuit Court of Cov-ington County granted severances and appellant was tried separately, convicted and sentenced to serve a term of 5 years in the penitentiary.
The appellant shot Rogers on the night of March 29, 1967. According to testimony for the prosecution, Sessums, an acquaintance of Rogers with whom he had been associated in activities of the Ku Klux Klan, had come to Rogers’ home shortly after 8:00 o’clock in the evening and had told Rogers that there was someone out front in a car that he wanted Rogers to meet. Rogers had been playing with his little son and had in his hand a cap pistol which he dropped into his shirt pocket as he accompanied Sessums out to the waiting automobile.
When tney got to the car, Rogers found it occupied by White, also a former associate in the Ku Klux Klan, and by appellant, whom Rogers had never seen before. They forced Rogers into the automobile at gunpoint and drove him to a secluded spot where the shooting occurred. During the ride, appellant held Rogers at gunpoint, he was struck by White and the cap pistol taken away from him. When Rogers asked “What’s going on?” he was told “You are soon going to find out.”
When the car was brought to a stop, White said “Boys, get him.” At this, Rogers opened the door and tried to escape. But because he had only one leg or for some other reason, Rogers fell to the ground and was lying there when appellant fired three times with his 38 calibre pistol, the second shot striking Rogers in his good leg.
Evidence for the prosecution was to the effect that appellant and his companions were members of the Ku Klux Klan and were engaged in enforcing punitive measures against Rogers who had previously been a member but had defected and refused to cooperate further in that organization’s activities.
Appellant admits that it was he who shot Rogers. He testified that he was familiar with guns and with their use and was a cool, excellent shot. He said that he and his companions thought the cap pistol in Rogers’ possession was real and that he, appellant, carefully and expertly shot Rogers in a non fatal spot, in what reasonably appeared to him to be necessary self-defense.
It was for the jury to decide from the evidence whether appellant shot Rogers with intent to kill him as well as whether he was justified in believing that such shooting was in necessary self-defense.
The defense sought to justify their abduction of Rogers upon the theory that White, a surety on a appearance bond filed by Rogers in a prosecution pending against him, had recruited Sessums and appellant for the purpose of assisting in the arrest of Rogers, who had defaulted. In support of this theory, proof was offered that White had been told by a deputy sheriff that unless Rogers appeared on “arraignment day” a forfeiture would be taken on the bond. Rogers’ testimony was that he had not defaulted and had been told by White that he would let him know when it was necessary that he appear. In any event, it is conceded that the three men went to Rogers’ home, forcibly placed him in their automobile, drove him away and that appellant shot him when they arrived in a secluded spot.
It is apparent that the two versions of the affair were in direct and irrecon *739 cilable conflict and presented a factual issue which it was the province of the jury to resolve. Obviously, the jury believed Rogers and rejected the testimony of appellant and his companions. We think that there was ample evidence to support this verdict of the jury.
After Rogers had been shot and was lying on the ground a blanket was thrown over him and appellant and his companions drove away. 1 '
After a considerable interval of time, during which blood flowing from Rogers’ wound covered a wide area where he lay, appellant and his companions returned. Their return, however, does not appear to have been prompted by a change of heart toward Rogers or out of consideration for the fact that otherwise he would bleed to death, but was for the purpose of extracting from him exculpatory statements to be recorded by a tape recorder which they had concealed under the seat of the automobile. At the trial a tape, alleged to contain a recording of the conversation between Rogers and the three men, together with a transcription of parts of it, were offered in evidence by appellant and excluded by the court.
The court’s action in excluding the tape and transcription are assigned as error on appeal.
Because of the facility with which tape recordings may be edited, parts erased or deleted, and portions rerecorded, the rule has been laid down that before a tape can be admitted in evidence, preliminary proof of its authenticity and accuracy is required. We think that here the proof offered for these purposes was inadequate. But more than that, the stenographer who transcribed the tape frankly admitted that parts of it were wholly unintelligible and that she had not been able to understand or transcribe it in its entirety. And while the transcriber undertook to assign the various statements to Rogers, Sessums, White and appellant, respectively, there was no proof that she knew, or was able to distinguish between, their recorded voices so as to be able to do this accurately.
Admittedly parts of the tape were wholly unintelligible. Moreover, on the face of the transcription it contained self-serving statements, was taken when Rogers had been wounded, was bleeding badly and begging to be taken to a hospital. It was replete with thinly veiled threats and the proof was that the car would be stopped from time to time while the interrogation of Rogers by these three men continued. Rogers was in great pain from his wound and weak and fainting from loss of blood, but those portions of the tape which were transcribed indicate that White, Sessums and appellant were engaged in an unrelenting browbeating of Rogers directed toward having him say (so that it could be recorded) that they had shot him in self-defense or that he had accidentally shot himself, the latter a statement now admitted to be false. Obvious threats against the wounded Rogers to induce him to make the desired statements, his deprivation of liberty by his abductors at the time, were .all circumstances of coercion so that Rogers’ statements were neither free nor voluntary but made under conditions of extreme duress. The court correctly declined to admit the tape or the partial transcription in evidence. Annot., 58 A.L.R.2d 1027, 1028 (1958).
The appellant assigns as error the admission of testimony as to the connection of the episode with membership in the Ku Klux Klan. This was relevant and material on the question of motive and clearly was competent for the purpose of establishing motive, for Rogers’ abduction and shooting. Bateman v. State, 64 Miss. 233, 1 So. 172, 173 (1887).
Other errors assigned are without merit.
Affirmed.
ETHRIDGE, C. J., and PATTERSON, INZER and ROBERTSON, JJ., concur.