Today's appellant is a petty pot pusher, who challenges his conviction for sale of marijuana and presents questions regarding the fairness of his trial. First, he urges that the prosecution violated its duty to disclose in pre-trial discovery the name of a confidential informant. Second, he challenges use of a tape-recording of the illegal transaction as evidence against him at trial.
We find no error requiring reversal.
 II.
On the evening of June 25, 1986, Officer James Kitchens of the Collins Police Department was operating as an undercover narcotics investigator in Hattiesburg, Mississippi. That evening Forrest County Deputy Sheriff Ronald David Wilson and *Page 1010 
two other officers provided backup surveillance for the undercover operation. An individual named Rowan Benjamin, the confidential informant, was riding with Officer Kitchens in Kitchens' 1973 Chevrolet pickup truck. Kitchens and Benjamin proceeded to a juke joint near Dabbs and Rosa Streets in Hattiesburg, where a number of people were standing around. Benjamin introduced Kitchens to Roger Middlebrook, Defendant below and Appellant here. Kitchens asked if Middlebrook would sell him some marijuana. Middlebrook said all he had was some joints, little rolled-up cigarettes. Middlebrook sold Kitchens twenty marijuana cigarettes for $20.00. Kitchens paid Middlebrook with cash that came "from the Metro."
At the time Kitchens was wearing a concealed body microphone so the conversation of the transaction would be recorded by a Unitel tape recording device located in Kitchens' toolbox on the truck. The conversation was also transmitted to Deputy Wilson who had parked about a block away on the next street parallel and was listening on a radio frequency commonly called a "Narcotics Channel". After the transaction was completed, Kitchens dictated a description of his seller's vehicle and described the man who sold him the marijuana as being 5'10" and weighing 160 pounds.
At the time of the sale, Middlebrook identified himself to Kitchens as "Larry", although Benjamin had previously told Kitchens his seller's correct name. Later Kitchens, following his custom and practice in such matters, went back to the scene to verify his identification. He approached Middlebrook and said, "What is going on, Roger?" According to Kitchens, Middlebrook replied, "Well, ain't nothing going on tonight," without disputing Kitchens' calling him "Roger".
On December 17, 1986, the Grand Jury of Forrest County charged Middlebrook in an indictment with the sale of 5.2 grams of marijuana, Miss. Code Ann. § 41-29-139 (Supp. 1986), and further charged Middlebrook as a recidivist by reason of a May 5, 1982, conviction for the sale of marijuana. Miss. Code Ann. § 41-29-147
(Supp. 1986).
On November 6, 1987, the Circuit Court called Middlebrook's case for trial. Middlebrook presented an alibi defense through his girlfriend, Brenda Franklin, who testified that he was at home with her on the evening of June 25, 1986, watching television. In due course, the jury found Middlebrook guilty as charged and the Circuit Court sentenced him to a term of six (6) years in the custody of the Mississippi Department of Corrections as a second offender.
Middlebrook now appeals to this Court.
 III.
Middlebrook first charges that the prosecution violated its duties under our rules of pre-trial criminal discovery. Middlebrook's specific complaint is that the prosecution did not disclose the identity of its confidential informant, Rowan Benjamin, until the night before trial.
An accused is not automatically entitled to disclosure of the identity of a confidential informant. See Rule 4.06, Miss.Unif.Crim.R.Cir.Ct.Prac. Rule 4.06(b)(2) authorizes discovery where "the informant depicts himself as eyewitness to the event or events constituting the charge against the defendant." We have sometimes stated the rule as requiring disclosure where the informant was an eyewitness to, or a participant in, the crime. Pinkney v. State, 538 So.2d 329, 348 (Miss. 1988); Arnett v. State, 532 So.2d 1003, 1008 (Miss. 1988); Swindle v. State, 502 So.2d 652, 658 (Miss. 1987). Obviously, if the informant is a participant in the crime, he will be an eyewitness to at least a part of the crime. In any event, it appears beyond dispute that Benjamin was an eyewitness and, accordingly, his identity was subject to disclosure to the defense prior to trial.
On the morning of November 2, 1987 — four days before trial — the district attorney advised one of the attorneys for Middlebrook that he believed the informant was a man named Kelvin Harris but was not certain *Page 1011 
of this and would check on the matter and advise if the name was not correct.[1] On the evening of November 5, 1987, the day before trial, the district attorney telephoned counsel and advised that the name of the informant was Rowan Benjamin. The informant did not testify at trial, nor did defense counsel move for a continuance.
We have repeatedly held an accused's remedy for tardy disclosure of that to which he was entitled in pre-trial discovery is a continuance reasonable under the circumstances.See, e.g., Moore v. State, 536 So.2d 909, 911 (Miss. 1988);Stewart v. State, 512 So.2d 889, 893 (Miss. 1987); Foster v.State, 484 So.2d 1009, 1011 (Miss. 1986). We have held equally often that the accused's right to a continuance is not self-executing and that he must affirmatively request it on pain of waiver. See, e.g., Cole v. State, 525 So.2d 365, 368 (Miss. 1987); Cabello v. State, 471 So.2d 332, 343 (Miss. 1985). Middlebrook made no such request and, accordingly, we find that he waived his right to a continuance and, as well, any other claim for relief he may have had by reason of the prosecution's eleventh hour disclosure.
On his motion for a new trial, Middlebrook called Benjamin who denied any participation in the offense or any knowledge of the transaction. He urges on appeal that we find error in the Circuit Court's denial of his motion for a new trial. Middlebrook's procedural opportunity to protect his interest in this regard was a request for a continuance on the morning of trial. In view of the last minute nature of the disclosure, quite likely he would have been entitled to this continuance. Stewart v. State, supra;Foster v. State, supra. For reasons not made apparent, Middlebrook chose not to exercise this opportunity. We hold him to that choice and affirm on this issue.
 IV. A.
Middlebrook next charges error in the Circuit Court's overruling his objection to the prosecution's introduction into evidence of the tape-recording of the marijuana sale transaction. It will be recalled that on the evening of June 25 Officer Kitchens had a concealed body microphone and made a cassette tape recording of the transaction. Middlebrook objected to the prosecution's offer of the tape recording as evidence against him. The Circuit Court overruled the objection.
On direct examination, Kitchens testified that when he met Middlebrook he (Kitchens) was wearing a "bug" that transmitted his conversations to a tape-recording device located in his truck. Middlebrook's principal complaint concerns the quality of the recording. When the recording was played in open court and to the jury, the court reporter noted that she was unable to transcribe it "due to the quality of the tape." All concede that it contains "certain static", i.e., the recorder could record only what it was able to "hear" through the transmitter.
We have traditionally required of the prosecution a substantial predicate before a tape-recording may be received in evidence.See, e.g., Monk v. State, 532 So.2d 592, 599 (Miss. 1988);Sparks v. State, 412 So.2d 754, 757 (Miss. 1982); Carr v.State, 218 So.2d 737, 739 (Miss. 1969); Melvin v. State,210 Miss. 132, 147, 48 So.2d 856, 861 (1950). These rules have been supplanted by the Mississippi Rules of Evidence,[2] Rule 901(a) of which provides:
 The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
Rule 901(b)(5) adds, as an example "of authentication or identification conforming *Page 1012 
with the requirements of . . . [Rule 901(a)]":
 Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.
In any event, the recording must pass the Rules' relevancy test in that it must have a
 tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Rule 401, Miss.R.Ev.
Authentication, first, for if the recording flunks this test, it is not admissible at all.[3] Rule 901(a) requires that, before the recording may be received in evidence, the prosecution must offer evidence adequate to satisfy the trier of fact that it was indeed what the prosecution claimed it to be: a recording of all sounds and statements incident to undercover Officer Kitchens' "buy" from Middlebrook. Whether the evidence met that minimal threshold was a matter for the Circuit Court. Rule 104(a), Miss.R.Ev. Kitchens testified that this is what the recording was. He explained the circumstances and, together with Deputy Wilson, provided the requisite chain of custody. Rule 901(a) seems satisified.[4]
We have listened to the recording and find much of it ranging from the inaudible to the incomprehensible. There are occasional audible references to "joints". The voice of a man trying to buy some joints — presumably Officer Kitchens — is at times distinguishable, and there are several — but fewer — moments when the voice of the "seller" may be comprehended. The counting of the joints and closing of the sale are audible, barely.
Kitchens testified that this recording was made at the time of his purchase from Middlebrook. In this light, a recording such as this creates the strong impression not only that the sale took place but that Middlebrook made it. Courts must proceed with care, for the fact that the recording is inaudible in substantial part carries the potential for prejudice of the accused. It is like unto the prosecution offering a photograph and describing it as showing the accused in the course of commission of a crime, only when viewed the photograph is largely a blur with the defendant indistinguishable.
The mere fact that portions of such a recording are inaudible does not render it per se inadmissible.[5] The question is whether what can be heard has probative value within Rule 401. Considered as evidence that Middlebrook sold marijuana to Kitchens, relevance of the tape recording is marginal at best. Much background noise, other voices, and just plain static abound so that, even with the most careful and strained listening, we detect little probity. We accept without hesitation the utility of tape recordings in law enforcement and recognize the evidentiary value of such recordings in criminal prosecutions. We understand, as well, the practical reality that few sales of controlled substances are made in sound controlled recording studios. Still, as a predicate to admissibility, Rule 401 requires that the recording be of such quality that it advances the ball.[6] The recording at issue, garbled and difficult as it is, meets the test *Page 1013 
in that it suggests someone is buying marijuana from someone else and, if nothing else, shows the corpus delicti.
We reject the suggestion that a tape recording such as this could only confuse the jury and impermissibly prejudice the accused. Jurors are not without common sense nor the capacity for discrete or critical judgment. Our criminal justice system necessarily proceeds on the premise that jurors take their responsibilities quite seriously and are likely less gullible than lawyers like to think. Our jurors are charged that they scrupulously regard the law as the trial court may instruct them,[7] their personal opinions and prejudices notwithstanding, and foremost among the law each juror must honor is the prosecution's burden of proving each element of the offense beyond a reasonable doubt. As in other contexts we presume as a matter of institutional imperative that our jurors respect the law as they are instructed by the court, see, e.g.,Parker v. Jones County Community Hospital, 549 So.2d 443, 446 (Miss. 1989); Williams v. State, 512 So.2d 666, 671 (Miss. 1987); Shoemaker v. State, 502 So.2d 1193, 1195 (Miss. 1987);Cabello v. State, 490 So.2d 852, 857 (Miss. 1986), for this is the least imperfect way we have for balancing society's demand for punishment of offenders and the accused's substantial right to a fair trial without sacrificing either.
These things said, the recording has marginal probative value in establishing the corpus delicti. The predicate upon which it has been offered gives it value in proving that Middlebrook made the sale. At worst, any error in admitting it is legally harmless. Because those who wrote our constitution accepted trial by jury as an article of faith, we take it that the jury listened critically and read into what they heard no more — and no less — than we have heard.
 B.
There is a separate context. Even if the tape-recording were not admissible to show the substance of the transaction between Middlebrook and Kitchens, it may be admissible to show Middlebrook's presence at the scene at the time. This point acquires significance in the context of Middlebrook's alibi defense that he was with his live-in girlfriend at home on the night in question. Officer Kitchens testified that there were two voices on the tape, Middlebrook's and his own. When this question was asked, however, the defense timely objected. The Court overruled the objection and Kitchens answered "my voice and Roger Middlebrook's."
Voice identification is a prerequisite for the tape to be admissible. This identification can be made by someone who has heard the voice "at any time under circumstances connecting it with the alleged speaker." United States v. Thomas,586 F.2d 123, 133 (9th Cir. 1978) (Drug Enforcement Administration Agent's three prior telephone conversations with defendant provided requisite foundation); United States v. Vitale, 549 F.2d 71, 73 (8th Cir.), cert. denied, 431 U.S. 907, 97 S.Ct. 1704, 52 L.Ed.2d 393 (1977) (Police officer's two prior conversations with defendant served as foundation). United States v. DiMuro,540 F.2d 503, 514 (1st Cir. 1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977) (Police officer's infrequent prior conversations with defendants meet requisite foundation);United States v. Rizzo, 492 F.2d 443, 448 (2d Cir.), cert.denied, 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed.2d 299 (1974) (Despite minimal exposure police officer was able to provide requisite foundation); Monk v. State, 532 So.2d 592, 599 (Miss. 1989) (sheriff identified voice of defendant).
Officer Kitchens gave no express indication that he knew Middlebrook's voice or how he was able to identify it. The cases discussed above make clear that the person offering voice identification testimony must as a predicate show some familiarity with that voice. See Gray v. State, 549 So.2d 1316, 1319 (Miss. 1989). Here, however, this formal failing is not fatal. Kitchens described the recording as one of his exchanges *Page 1014 
with Middlebrook on the evening of June 25. He explained how the recording was made and what was happening as he made it. More particularly, he explained that Middlebrook's voice was recorded. This is adequate authentication under Rules 901(a) and (b)(5) and, as well, gives the recording Rule 401 legal relevancy in that it makes Middlebrook's alibi defense "less probable than it would be without the evidence."
Kitchens' testimony makes clear that he heard Middlebrook's voice on the night of June 25. Kitchens returned to the scene several weeks later and approached Middlebrook and called him by name "Roger" to verify his identification and heard Middlebrook's voice again on that occasion. Coupled with Kitchens' knowledge of the circumstances of making the tape recording, these facts provided a predicate adequate that Kitchens could testify that Middlebrook's voice was on the tape recording. See Rule 901(b)(5), Miss.R.Ev.; see generally, 5 Weinstein's Evidence
§ 901(b)(5)[01] (1989); United States v. Cerone, 830 F.2d 938, 949 (8th Cir. 1987).
These things considered, we hold the proceedings below without error and affirm the judgment of conviction entered in the Circuit Court and, as well, the sentence imposed thereon.
CONVICTION OF SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF SIX (6) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A SUBSEQUENT OFFENDER AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
[1] Apparently there were other charges pending against Middlebrook at the time and it appears that the district attorney was in doubt whether Harris was the informant on the present charge.
[2] See Leatherwood v. State, 548 So.2d 389, 399 (Miss. 1989); Mitchell v. State, 539 So.2d 1366, 1369 (Miss. 1989).
[3] See Ellis and Williams, Mississippi Evidence 245-48 (2d ed. 1988).
[4] For a useful, though arguably legally excessive authentication examination of the foundation witness, see
Imwinkelried, Evidentiary Foundations 73-77 (1986).
[5] See 3 Wharton's Criminal Evidence 693-98 (14th Ed. 1987); Annotation, Omission or Inaudibility of Portions of SoundRecordings as Affecting its Admissibility in Evidence, 57 A.L.R.3d 746 (1974).
[6] In a sense, Rule 401's requirement of relevancy and Rule 901(a)'s requirement of authenticity coalesce at this point. A tape recording of what the parties said at a sale of a controlled substance is by definition relevant evidence at the trial of one charged with making that sale. If it does not audibly depict a substantial portion of that sale, the recording may not be "what its proponent claims" it to be.
[7] The Circuit Court may issue cautionary instructions regarding the purpose or effect the jury may give tape recordings like today's. Middlebrook requested no such instructions here.