PAYNE, J.,
for the Court:
¶ 1. Noah Williams appeals his conviction of attempted robbery challenging that his right to a speedy trial was violated, that the trial court erred in admitting over his objection certain evidence, and that the overwhelming weight of the evidence requires a reversal of his conviction. Finding error, we reverse the judgment of the Circuit Court of Jackson County.
THE FACTS
¶ 2. On January 4, 1995, Robert Hooker, an agent with the Mississippi Bureau of Narcotics, was working undercover in Gautier, Mississippi. The previous day Hooker had negotiated a drug buy with Gerald Stribling. On the day in question, Hooker, who was given marked money and equipped with an audio/video surveillance system, drove to Belle Vue Apartments in Gautier with the intent to purchase drugs from Stribling. When Hooker arrived, the Appellant, Noah Williams, approached Hooker’s vehicle with Stribling. Hooker, however, advised Williams that he was there to “deal” with only Stribling. According to Hooker, Williams suggested that he buy twenty dollars worth of cocaine from him and twenty dollars worth of the drugs from Stribling. Hooker refused indicating that he wanted to purchase cocaine from Stribling. Thereafter, Williams reached inside Hooker’s vehicle attempting to seize the money Hooker held in his hand. When Hooker refused to let the money go, Williams, using his fists, began hitting Hooker. Having the cocaine in hand, Hooker drove off throwing forty dollars out his car window. Using his rear view mirror, Hooker saw Stribling retrieve the forty dollars.
¶ 3. Williams was indicted on April 7, 1995, arraigned on November 6, 1995 and tried on September 4, 1997 for aggravated robbery and transfer of a controlled substance. Immediately prior to trial, Williams sought a ruling on his motion that he was denied his right to a speedy trial. Because voir dire had been conducted and the jury was about to be selected, the trial court took the motion under advisement and took the matter up at the conclusion of the trial. At trial, the State offered a video recording of the transaction into evidence. Over Williams’s objections the trial court allowed the video into evidence.
¶ 4. Upon motion, the trial court granted Williams a directed verdict, ruling that the State had produced insufficient evidence showing that Williams transferred a controlled substance. The jury was instructed on the crime of attempted robbery as well as the lesser-included-offense of simple assault. After closing arguments, the jury returned a guilty verdict of attempted robbery. It is from the entry of this judgment that Williams appeals.
THE ISSUES
¶ 5. Williams assigns as error the following:
I. WHETHER THE TRIAL COURT ERRED IN DENYING WILLIAMS’S MOTION TO DISMISS ON THE GROUNDS THAT HIS RIGHT TO A SPEEDY TRIAL WAS VIOLATED.
II. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE A VIDEO TAPE RECORDING.
III. WHETHER THE OVERWHELMING WEIGHT OF THE EVIDENCE REQUIRES REVERSAL OF WILLIAMS’S CASE.
ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN DENYING WILLIAMS’S *279 MOTION TO DISMISS ON THE GROUNDS THAT HIS RIGHT TO A SPEEDY TRIAL WAS VIOLATED.
¶ 6. Williams argues on appeal that both his constitutional right and statutory right to a speedy trial has been violated. Since we find a statutory violation we need not address Williams’s constitutional argument. To evaluate Williams’s speedy trial claim it is necessary to review the time table of events in relation to this issue.
January 4,1995: Commission of the crime.
April 3,1995: Filing of the indictment.
June 2, 1995: Capias issued.
June 26,1995: Williams’s bond filed.
November 6,1995: Williams’s arraignment. Clock Starts
November 15,1995: Williams’s motion for discovery and demand for a speedy trial filed.
January 23,1996: Trial was set on Judge Jackson’s docket and the record indicates that Judge Jackson’s husband who is a police officer was listed as a witness creating a conflict for Judge Jackson. 78 days (clock stops)
April 22,1996: Trial was set on Judge Bill Jones’s docket. Record indicates that defense was not given notice. 78 days (clock starts)
August 15,1996: Trial was set; nothing in record to indicate why trial was not held. 192 days
November 4,1996: Trial was set but was “bumped” by a civil trial (crowded docket) 273 days (clock stops)
March 6,1997: Trial was scheduled to start but a defense continuance was granted because of a scheduling conflict. 273 days
May 22,1997: Continuance granted to the State because State’s main witness, Robert Hooker, was unavailable. 273 days
April 30,1997: Trial set to begin but record fails to indicate why trial was not held. 273 days (clock starts)
August 7,1997: Agreed order of continuance due to the birth of Williams’s counsel’s first child. 372 days (clock stops)
September 4,1997: Jury trial conducted. 372 days
1. Statutory Violation
¶ 7. Section 99-17-1 of the Mississippi Code, as amended, provides “[u]nless good cause is shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.” An accused’s statutory right to a speedy trial attaches when he is arraigned. Black v. State, 724 So.2d 996 (¶ 14) (Miss.Ct.App.1998); Mitchell v. State, 609 So.2d 416, 420 (Miss.1992). In this case, we begin counting the days between arraignment and trial, on November 6, 1995, the day on which Williams was arraigned, and stop counting the days on September 4, 1997, the day on which Williams’s trial was conducted. Thus, the total number of days between arraignment and trial is 667 days.
¶ 8. The State argues first that Williams waived his right to a speedy trial *280 by failing to raise the matter prior to the morning trial was scheduled to begin. The State contends that the trial court was not given the- opportunity to ensure that Williams received a speedy trial because of his failure to timely bring the matter to the attention of the court. Consequently, the State contends that Williams thereby waived his right to a speed trial. We note, however, that Williams timely asserted his right to a speedy trial when he filed his motion entitled “Motion for Discovery/Speedy Trial Demand.” As the State observes, Williams did not compel a ruling on his motion until the morning of trial at which time the trial court acknowledged the lateness of the hour for such motion. The trial court decided to attend to the motion after trial. We find no error in the trial court’s decision to address the motion after trial and decline to rule that Williams waived his right to a speedy trial.
¶ 9. Following a hearing on the speedy trial issue the trial court stated for the record that the county in which it sat was the third largest docket in the State indicating that it had a very congested docket schedule. The trial court determined that there was no prejudice to Williams because of the delays caused by the transfer of the case from Judge Jackson’s docket to Judge Jones’s docket and then to his docket. The trial court thereafter accepted and made part of the record the State’s computation of time regarding the delays associated with Williams’s case. In conclusion, the trial court determined that “time did not run for a speedy trial,” and denied the motion both on statutory and constitutional grounds.
¶ 10. Congested trial dockets are considered “good cause” under section 99-17-1 of the Mississippi Code, as amended; however, an overcrowded docket will not automatically suffice to establish “good cause.” McGee v. State, 608 So.2d 1129, 1132 (Miss.1992). “[U]pon the proper showing by the State in response to a defendant’s timely motion for dismissal because of an alleged 270 day violation, docket congestion can be a proper basis for good cause when supported by the facts of the particular case.” Walton v. State, 678 So.2d 645, 648 (Miss.1996).
¶ 11. After Williams’s arraignment, trial was scheduled to begin on January 23, 1996. Hence, there was a seventy-eight day delay from arraignment to trial. The ease was assigned to Judge Kathy Jackson’s docket. The record indicates that trial did not take place on January 23, 1996, and the case was thereafter assigned to the trial docket of Judge Bill Jones. The reason for the change in dockets, as reflected in the record, was a conflict of interest on the part of Judge Jackson. Her husband, a narcotics officer, was listed in the case as a potential witness. We conclude that the delay between January 23, 1996 and the next scheduled trial date was for good cause and should not be counted against the State.
¶ 12. Williams’s trial was next scheduled for April 22, 1996. According to notes made by the clerk of the court, trial did not begin on April 22, 1996 as the clerk’s office sent notice of trial to the wrong attorney. This delay was not the fault of the defense; therefore, this time counts against the State.
¶ 13. The case was next set to begin on August 15, 1996. A total of 114 days ran from April 22, 1996 to the next trial setting. Therefore, 192 days have run against the State thus far. Williams’s trial, however, was not held on August 15, 1996 and there is nothing in the record showing why Williams’s trial did not take place. Thus, we attribute any delay from August 15, 1996 to the next trial date to the State. The next trial date was November 4, 1996. From August 15, 1996 until November 4, 1996, a total of eighty-one days ran against the State. For statutory calculations, a total of 273 days have run against the State. We need not calculate further.
*281 ¶ 14. The importance of a skilled clerk for trial management cannot be questioned. The perils of poor docket management and its consequences are readily apparent when speedy trials are not afforded and the 270 day statute not faithfully observed. In the instant case, the defendant was faced with a plethora of new trial settings, circuit clerk’s sending notice of trial to the wrong attorney, circuit clerks and district attorney’s office not noticing that the trial judge’s spouse was a potential witness until the “eleventh” hour, and other such frustrating delays. We say frustrating delays, because most, if not all, of the delays above could have been avoided but for poor docket management by the district attorney and circuit clerk’s office. The circuit court neglected Williams’s case for almost two years, apparently because of what appears to be seriously deficient docket management procedures.
¶ 15. Nonetheless, we are constrained to reverse due to the obvious 270 day violation. First, in Kolberg v. State, 704 So.2d 1307, 1318 (Miss.1997), our supreme court ruled that:
dismissal with prejudice is not required by the [speedy trial] statute unless the state upon the finding of a violation fails to persuade the court that the violation did not prejudice the defendant’s ability to defend against the charge and that the state did not deliberately engage in oppressive conduct.
Id. (quoting State v. Harrison, 648 So.2d 66, 71 (Miss.1994)). In this case, the trial court found that while there was delay occasioned by the transfer of his case from the docket of one trial judge to the next, Williams was not prejudiced by any such delay. Logically, the next question is: What is the remedy when there is a 270 day violation and where the circuit court finds that the defendant has not been prejudiced by the more than 270 day delay? The Mississippi Supreme Court has decided that the proper remedy in a situation such as this is dismissal without prejudice to reindict. See Harrison, 648 So.2d at 71 (overruled on grounds unrelated to the remedy for speedy trial violation). In Kolberg, 704 So.2d at 1307 (¶ 51) the Mississippi Supreme Court stated:
This Court has, in fact, established a procedure for determining when prejudice to a defendant exists. In Harrison, this Court stated:
We hold that dismissal with prejudice is not required by the statute unless the state upon the finding of a violation fails to persuade the court that the violation did not prejudice the defendant’s ability to defend against the charge and that the state did not deliberately engage in oppressive conduct.
Harrison, 648 So.2d at 71. This Court determined that the remedy was “dismissal without prejudice to reindictment” and remanded the case to the lower court for a hearing for “a determination whether Harrison has been prejudiced by the delay incurred prior to dismissal and whether the state in delaying trial was deliberately engaging in oppressive conduct.” Harrison, 648 So.2d at 71. Here, Kolberg has not alleged oppressive conduct by the State. To the contrary, the State has adequately demonstrated that there was no prejudice to Kolberg in defending against the charge and no oppressive conduct engaged in by the State.
Consequently, dismissal with prejudice is not required by the statute unless the State upon the finding of a violation fails to convince the trial court that the violation did not prejudice the accused’s ability to defend against the charge and that the State did not deliberately engage in oppressive conduct. Therefore, if the trial court is so persuaded, the remedy shall be dismissal without prejudice to reindict.
¶ 16. In both the Kolberg case and the Harrison case, the supreme court determined that a hearing on whether the respective defendants were prejudiced by the 270 day violation was required. Thus, *282 each case was remanded. Here, Judge Backstrom made a finding that Williams did not suffer prejudice by the delays in his trial. So, there is no need for us to remand this case for a hearing on prejudice. We rule that Williams’s case is dismissed without prejudice to reindict.
II. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE A VIDEO TAPE RECORDING.
¶ 17. To facilitate the circuit court in case the district attorney’s office determines to reindict and retry Williams, we will address his second issue.
¶ 18. Williams challenges the trial court’s admission into evidence a video tape on which the exchanges between Officer Hooker and Williams were recorded. He contends that the video recording had an inaudible voice recording, and he was prejudiced by its admission. According to Williams, the “bits and pieces” of audio that the jury heard and the fact that the tape did not show Stribling retrieve the cash from the ground “worked heavily against him.” In response, the State argues that the video recording of the exchanges between Officer Hooker, Stribling, and Williams was relevant evidence under Mississippi Rule of Evidence 401 and properly admitted into evidence. The State also maintains that only portions of the recording were difficult to hear and that the majority of the video’s contents was “decipherable.”
¶ 19. We first recognize that a trial court is vested with broad discretion in determining the admissibility evidence. Coleman v. State, 697 So.2d 777, 784 (Miss. 1997). Only where this discretion is so abused as to be prejudicial to the accused will this Court reverse a lower court’s ruling. Id.
¶ 20. Over objection the trial court found the video was admissible. It was during Officer Hooker’s testimony that the video recording was played for the jury and he was allowed to explain what was occurring in the tape. Additionally, the State was permitted to replay portions of the tape during Hooker’s testimony allowing Hooker to recount for the jury what had taken place.
¶ 21. “The mere fact that portions of ... a recording are inaudible does not render it per se inadmissible. The question is whether what can be heard has probative value within Rule 401.” Middlebrook v. State, 555 So.2d 1009, 1012 (Miss. 1990) (footnote omitted).
¶ 22. Having viewed the video and audio tape and considered the testimony, we conclude that the trial court did not abuse its discretion in admitting the video tape into evidence. The video was not so inaudible as to render it inadmissible.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING, P.J., COLEMAN, DIAZ, LEE, AND THOMAS, JJ, CONCUR.
SOUTHWICK, P.J, CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J, BRIDGES AND IRVING, JJ.