¶ 1. Antwon and Donald Lawrence were convicted in the Circuit Court of Marshall County on two counts of distribution of crack cocaine within 1500 feet of a public park. After being arrested as a result of a sting operation, they were both sentenced to two twenty-year sentences to be served concurrently in the custody of the Mississippi Department of Corrections. Both defendants were also assessed a fine of $10,000. Each being aggrieved of his conviction and sentence, now appeal with Antwon presenting three issues for our review and Donald presenting one. The first three issues are recited from Antwon's brief and the last issue is recited from Donald's brief: *Page 654 
 (1) THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS TAPE RECORDING;
 (2) THE TRIAL COURT ERRED BY OVERRULING MOTION FOR J.N.O.V., OR, FOR RECONSIDERATION OF SENTENCE;
 (3) CUMULATIVE ERROR; and
 (4) WHETHER DONALD LAWRENCE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL LEVEL.
Finding these arguments to be without merit, we affirm the sentences given to Antwon Lawrence and Donald Lawrence respectively.
 FACTS
¶ 2. As the subjects of an undercover narcotic investigation, Antwon and Donald Lawrence sold crack cocaine to police officer David Austin. At the request of Investigator Ken McGill, Officer Austin made the purchases with the assistance of a confidential informant. On December 16, 1997, the informant and Officer Austin attempted to make the first buy at the Lawrence residence in Holly Springs, Mississippi. The door was answered by Donald Lawrence who told Officer Austin that Antwon was not home. Later Officer Austin and the informant returned to the house. Donald Lawrence answered the door and asked them how much they wanted. They told him "a sixty." Donald told the officer that Antwon was still not at home, but that he would be back soon as he had gone to get some crack. However, instead of leaving, Officer Austin, the informant, Donald Lawrence and another person[1] sat and talked while waiting for Antwon Lawrence to return with the drugs.
¶ 3. When Antwon returned, Donald told Antwon that Officer Austin wanted $60 worth of crack cocaine. Officer Austin told Antwon the same. Donald and Antwon went into another room and talked. Officer Austin testified that Donald came out and argued with him about whether Austin would share the crack with Donald. Antwon handed Officer Austin three rocks of crack cocaine. Donald blocked the doorway and demanded some of the crack in Officer Austin's possession. Officer Austin pretended to give some to Donald and then left the residence. He then gave the rocks of crack cocaine to Investigator McGill, waited for less than half an hour and went back for another buy.
¶ 4. Again, Donald Lawrence answered the door. Officer Austin told Donald that he wanted a $40 dollar piece that time, and Donald went to tell Antwon. Antwon came to the door and gave Officer Austin the crack. Again Donald argued with Officer Austin over whether Austin would share his buy with Donald. Officer Austin turned over the contents of that buy to Investigator McGill.
¶ 5. Both of these transactions were captured on audio tape as Officer Austin was wired with a concealed microphone. Investigator McGill and Officer Randy Harper listened as the transactions took place.
 DISCUSSION (1) THE TRIAL COURT DID NOT ERR WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS THE TAPE RECORDINGS.
¶ 6. Defense counsels for both Antwon Lawrence and Donald Lawrence objected to the introduction of these tapes at trial in their joint motion to suppress. Their argument was that the tapes were unintelligible, overtly prejudicial and served only to bolster witness testimony for the State. In Antwon's brief he continues along the lines of M.R.E. 403 claiming that the *Page 655 
evidence should be excluded because of confusion, cumulative testimony or prejudice.
¶ 7. The term bolstering is misused here. Bolstering is a Mississippi Rule of Evidence concept. M.R.E. 608 addresses the attempt to lend support to a witness's character at trial prior to the veracity of that witness being questioned. One may only respond to charges of untruthfulness. M.R.E. 608(a)[2] The audio tapes in question do not bolster the testimony of any of the State's witnesses. Their veracity was never at issue. "Such evidence, if otherwise admissible, would not be inadmissible simply because it corroborated . . . [the] testimony."McDavid v. State, 594 So.2d 12, 16 (Miss. 1992) (citing Henry v. State,209 So.2d 614, 617 (Miss. 1968)). The tapes in this situation are corroborating evidence of the crime committed.
¶ 8. The tape recordings are also clearly admissible. The steps for admissibility of this type of evidence are (1) Rule 401 — whether the evidence is relevant; (2) Rule 901 — whether the evidence has been properly authenticated; and (3) Rule 403 — whether the evidence should be excluded because the prejudicial effect outweighs the probative value.
¶ 9. When faced with the question of whether the tape recordings were relevant and properly authenticated, the Circuit Court of Marshall County in the case at bar held that the tapes were admissible as evidence against the Lawrences. Whether the evidence presented satisfies M.R.E. 401 and 901 is a matter left to the discretion of the trial judge. M.R.E. 104(a) (emphasis added). His decision will be upheld unless it can be shown that he abused his discretion. Stromas v. State, 618 So.2d 116
(Miss. 1993) (citing Butler v. State, 592 So.2d 983, 986 (Miss. 1991);Monk v. State, 532 So.2d 592, 599 (Miss. 1988)). It is the opinion of this Court supported by the case law that the decision of the circuit court to admit the tapes as evidence was not an abuse of discretion.
¶ 10. Defense counsel conceded in their motion ore tenus that the tapes were relevant evidence thereby neutralizing whatever objection they might have made under M.R.E 401.[3] Defense counsel never broached the Rule 901 objections that could have been made. The evidence in question requires "authentication or identification as a condition precedent to admissibility . . . to support a finding that the matter in question is what its proponent claims." M.R.E. 901(a). Particularly a 901(b)(5) objection by the defense as to the voice identification would have been timely. Granted, the State could have easily overcome any objections regarding voice identifications by their witnesses had there been any proffered by the Defense. However, no objections were made.
¶ 11. Three witnesses were presented by the State with first hand knowledge of the transactions and at the very least one of them, Officer Austin, could have identified the voices. The State easily erased any doubt that the tape recordings were of the accused drug transactions. Officer Austin, Investigator McGill and Officer Harper all testified that the tapes were of the drug transactions. They all also testified that they listened to the tapes prior to trial and the tapes were accurate depictions of the drug transaction. The prosecution did identify the tapes with the testimony of a witness with knowledge. M.R.E. 901(b)(1). The State also covered any chain of custody question as testimony from each of the officers traced the chain *Page 656 
from the date of transaction to the tapes' appearance at trial.
¶ 12. As for Antwon's argument that the tapes should not be admitted because they are unintelligible, it is unsupported by case law. The Mississippi Supreme Court held in the case Middlebrook v. State,555 So.2d 1009 (Miss. 1990), that "[t]he mere fact that portions of such a recording are inaudible does not render it per se inadmissible. (footnote omitted). The question is whether what can be heard had probative value within Rule 401." Id. at 1012. The long lapse of time on one of the tapes and the inability of defense counsels to make sense of the recordings is not convincing. The determination of the validity and believability of this type of evidence is exactly the job for which a jury is empaneled. Id. at 1013.
¶ 13. In Middlebrook, the court was faced with the problem of the undercover officer not giving a clear indication that he knew Middlebrook's voice or that he could identify it. Justice Robertson stated that this was a formal flaw but was not fatal. It was not fatal because the officer described the exchanges, how the recordings were made and what happened when they were made. The officer also stated that the appellant's voice was recorded. Because of the grouping of these items, the requirements for Rules 901 and 401 were met. Id. at 1014.
¶ 14. In the case at bar, at various times during testimony the State's witnesses testified to the exchanges, how the recordings were made and what was happening when they were made. Officer Austin described in great detail the circumstances of each episode. At no point did the officers identify the appellants by the voices on the tape recordings. However, physical identification of the appellants was made by Officer Austin in court. When faced with the question of whether a tape recording is relevant and properly authenticated, this Court held in Martin v.State, 724 So.2d 420, 422 (Miss. Ct. App. 1998), that the failure of the witness to identify a participant's voice does not render an audio tape automatically inadmissible.
¶ 15. Antwon cites Underwood v. State, 708 So.2d 18 (Miss. 1998) in support of his contentions. He requests that this Court extend its holding in Underwood to include M.R.E. 403 matters as well. Underwood
deals with prior bad acts and has no relevance to this proceeding. Antwon's reliance here is misplaced.
 (2) THE TRIAL COURT DID NOT ERR BY OVERRULING MOTION FOR J.N.O.V., OR, FOR A RECONSIDERATION OF THE SENTENCE.
A. Judgment Notwithstanding the Verdict
¶ 16. Antwon believes that the trial court erred by not granting his motion for a judgment notwithstanding the verdict. In a recent decision by this Court, the standard for evaluating a JNOV was reiterated. "[T]he standard for reviewing the denial of a JNOV is whether or not the evidence was sufficient to warrant such and whether fair-minded jurors could have arrived at the same verdict." White v.State, 761 So.2d 221, 224 (Miss. Ct. App. 2000).
 In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with . . . [a defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. . . .
Id. (quoting McClain v. State, 625 So.2d 774, 778 (Miss. 1993)).
¶ 17. The challenge is to determine whether the evidence sufficiently supports the guilty verdict. White, 761 So.2d at 227. Based on the testimony of the three law enforcement officers and the testimony by Antwon Lawrence himself, fair-minded jurors could have and did *Page 657 
arrive at the same verdict. The jurors considered the testimony, decided that the State met their burden and concluded that Antwon Lawrence was guilty jon both counts. There is nothing in the record indicating the sufficiency of the evidence should be questioned. We affirm the trial court's ruling as to the denial of the motion for JNOV.
B. Reconsideration of the Sentence
¶ 18. In the case Edwards v. State 615 So.2d 590, 597 (Miss. 1993), our supreme court held that a trial judge is not in error nor has he abused his discretion for sentencing a defendant within the limits set out in the statute. Conversely, if a sentence is grossly disproportionate to the crime committed, it can then be attacked on Eighth Amendment grounds. Wallace v. State, 607 So.2d 1184, 1188 (Miss. 1992).
¶ 19. Antwon was convicted of selling crack on two separate instances approximately 575 feet from a public park. Antwon was sentenced to two twenty-year terms to be served concurrently and a fine of $10,000. The statute allowed for no more than thirty years in prison with the fine portion being not less than $5000 and not more than $1,000,000. Miss. Code Ann. § 41-29-139(b)(1) (Supp. 2000). Our state enhances the sentences of those convicted of sale of a controlled substance within 1500 feet of a public park. Miss. Code Ann. § 41-29-142 (Rev. 1993). For each count, Antwon could have been sentenced to twice the time and fine that is authorized by statute. Instead of condemning Antwon to spend the next forty years in prison, which was within the circuit court's discretion, Judge Lackey decided that the sentences should be served at the same time. Essentially, Antwon is only serving half of his sentence, a total of twenty years which will not be held by this Court to be "grossly disproportionate to the crime committed." Based upon these facts this issue is without merit.
¶ 20. Antwon also argues that he should have been given a presentence investigation and hearing. The scope of a presentence investigation and hearing covers several areas regarding a defendant that may be included in consideration of the sentence. URCCC 11.02. Antwon lists many of them in his brief and they are (1) the offense and surrounding circumstances; (2) prior record of the defendant; (3) a defendant's financial condition; (4) a defendant's educational background; (5) a defendant's employment and military status and background; (6) social history, family relationships, marital status and residence history; (7) environment where a defendant would return if granted probation; and (8) special resources available to a defendant. URCCC 11.02.
¶ 21. In light of the sentence given to Antwon, it is obvious that the circuit court took into consideration many of the factors listed above, including the youth of the offender, his background and that this was his first offense. Antwon himself testified as to his precarious living arrangements. His mother and stepfather work all the time so there is little time for supervision and his father is clearly concerned more with drugs than the well-being of his child. Antwon's alibi was that he skipped a week of school because he could not get a ride with any of his family back to Holly Springs. While this farcical story was not believed as a viable alibi by the jury, it was clear to the trial court that Antwon was in no position to receive meaningful supervision at either home. The trial court gave consideration to the many concerns that are addressed in presentence investigations and hearings thereby negating any real concern that might have been at issue.
¶ 22. Regardless of the above paragraphs, our courts are not required to grant a presentence investigation or hearing. Taylor v.State 741 So.2d 960, 964 (Miss. Ct. App. 1999) (citing Edwards v. State,615 So.2d 590, 598 (Miss. 1993)) (see also Hart v. State, 639 So.2d 1313, 1320 (Miss. 1994) (holding that the use of presentence investigations is discretionary and is *Page 658 
not mandatory). There is no "right" to a presentence investigation.Robertson v. State, 595 So.2d 1310, 1315 (Miss. 1992). There is no error here.
¶ 23. Antwon throws in several last minute complaints. One of which is that he has been punished for not pleading guilty and therefore going to trial. Even if we based our decision solely on the information presented in his brief, his contentions are still unpersuasive. It is a defendant's right and a choice to trial by jury. No one forced him to go to trial to be judged by a jury of his peers. He chose to do so and this Court will not reverse the trial court's verdict and sentence because the defendant does not like the consequences of his choices. His argument here is far from original and is addressed in several Mississippi cases.
¶ 24. In Taylor, the appellant argued that because he refused the offered plea bargain he was punished for demanding a trial. Taylor v.State, 741 So.2d 960 (Miss. 1994). In citing Reynolds v. State,585 So.2d 753, 756 (Miss. 1991), the Taylor court agreed that "the imposition of a defendant's sentence is within the discretion of the trial court, and generally, this Court will not review the sentence if it is within the statutory limits." Taylor, 741 So.2d at 964. The court also held in Taylor, "[t]he court does not err in sentencing the defendant to a greater sentence than that which was offered in the plea bargaining process where the record reflects that the court remained aloof from the bargaining process or was unaware of the bargaining." Id. (citing Templev. State, 498 So.2d 379, 381 (Miss. 1986). Antwon has not been punished for exercising his right to a trial by a jury. This issue has no merit.
(3) CUMULATIVE ERROR
¶ 25. This is obviously the appellant's catch-all section. However, based on the above discussion, we hold this issue to be without merit.
 (4) WHETHER DONALD LAWRENCE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL LEVEL.
¶ 26. Donald Lawrence claims his counsel at trial was ineffective because (1) counsel did not move to have the trials of the defendants severed; (2) counsel did not move to have the two counts against him severed; (3) counsel did not request the audio tapes from the prosecution prior to the date of trial and he only listened to them the morning of the trial; (4) counsel did not attack the inconsistencies of the testimony and the contemporaneous reports made by the officers; (5) Officer Austin identified a man called "Poochie" and then identified Donald Lawrence as that man; (6) counsel did not question the credibility of the State's witnesses and (7) counsel never made any Batson objections to the State's voir dire challenges.
¶ 27. The standard for evaluating whether a defendant received effective assistance of trial counsel is Strickland v. Washington,466 U.S. 668, 687-96 (1984). The Mississippi Supreme Court adopted this two-part test in Stringer v. State, 454 So.2d 468 (Miss. 1984); (see alsoBolton v. State, 734 So.2d 307, 309 (Miss. Ct. App. 1999); Moody v.State, 644 So.2d 451, 456 (Miss. 1994); McQuarter v. State, 574 So.2d 685, 687 (Miss. 1990)). Donald must meet both prongs of the Strickland test in order to prevail in his appeal on the matter. Brown v. State,626 So.2d 114, 115 (Miss. 1993). The first prong is that Donald must show that his defense counsel's performance was deficient. The second prong is that Donald's defense must have been prejudiced by his counsel's deficient performance. Strickland, 466 U.S. at 687; Stringer, 454 So.2d at 476. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. The burden rests with the defendant to show that counsel's performance was deficient, and his defense was prejudiced. Moody, 664 So.2d at 456. *Page 659 
¶ 28. All of this is measured by a totality of the circumstances with the court looking at counsel's overall performance. Bolton, 734 So.2d at 309, (citing Taylor v. State, 682 So.2d 359, 363 (Miss. 1996));(see also Conner v State, 684 So.2d 608, 610 (Miss. 1996)). The decisions of whether or not to file motions, call witnesses, ask certain questions and make objections falls within the ambit of trial strategy.Blanch v. State, 760 So.2d 820, 822 (¶ 5) (Miss. Ct. App. 2000);Scott v. State, 742 So.2d 1190 (¶ 14) (Miss. Ct. App. 1999). There is a presumption that reasonable professional assistance was provided to the defendant. That presumption can be overcome by showing that a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Bolton, 734 so. 2d at 309 (¶ 3); (citing Schmitt v. State, 560 So.2d 148, 154 (Miss. 1990) (quoting Strickland, 466 U.S. at 694).
¶ 29. Donald offers his assumption that if his and his son's cases had been severed, he would have received a different outcome. However, Donald only offers his assumptions as to what would have changed. He offers no proof that he was prejudiced by the nonseverance of the defendant's trials or, for that matter, the nonseverance of the counts against him. "The trial judge had discretion to grant a severance if it is necessary to promote a fair determination of the defendant's guilt or innocense." Hammonds v. State, 734 So.2d 295 (¶ 13) (Miss. Ct. App. 1999).
¶ 30. In Batson v. Kentucky, 476 U.S. 79 (1986), the court held that a defendant had to establish a prima facie case of purposeful discrimination in the selection of the jury.
 First the defendant must show that he is a member of a cognizable racial group . . . and the prosecutor has exercised peremptory challenges to remove . . . members of the defendant's race. Second, the defendant is entitled to rely on the fact, . . . that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen form the petit on account of their race. This combination of factors . . . raises the necessary inference of purposeful discrimination.
Batson, 476 U.S. at 96.
¶ 31. Donald asserts in his brief that the five peremptory challenges used by the State during jury selection are suspect because the State offered no reason as to why these jurors were struck. A peremptory challenge by design does not require explanation as it is a "challenge to a juror without assigning, or being required to assign a reason for the challenge." Blacks Law Dictionary (6th ed. 1997). However, Donald asserts that his attorney should have at least recorded the gender and the race of these prospective jurors. He is correct in stating that nothing in the record indicates the race and gender of the stricken veniremen; however, Donald's brief neither suggests nor proves any discriminatory intention, plan or design by the State to exclude black jurors from this jury. Nowhere in the record does there seem to be a necessity to question the striking of the five jurors. Neither the defense attorneys nor Judge Lackey was suspicious as to the State's use of its strikes. This Court can only assume that Donald raises this issue on appeal because these jurors were in fact black. There is no proof offered by Donald to show whether the group in question was a significant part of the African American racial makeup of the veniremen or not. Without this information, this issue cannot be properly addressed and is held to be without merit.
¶ 32. The remainder of Donald's grievances fall within the ambit of trial strategy *Page 660 
as discussed earlier and will not be discussed further.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY OFCONVICTION OF ANTWON LAWRENCE OF TWO COUNTS OF SALE OF COCAINE WITHIN1500 FEET OF A PUBLIC PARK AND SENTENCE OF TWENTY YEARS ON EACH COUNT TOBE SERVED CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OFCORRECTIONS AND THE FINE OF $10,000 IS AFFIRMED.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY OFCONVICTION OF DONALD LAWRENCE OF TWO COUNTS OF SALE OF COCAINE WITHIN1500 FEET OF A PUBLIC PARK AND SENTENCE OF TWENTY YEARS ON EACH COUNT TOBE SERVED CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OFCORRECTIONS AND THE FINE OF $10,000 IS AFFIRMED.
¶ 35. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, IRVING, LEE,PAYNE, AND THOMAS, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.
[1] A woman named Faye Porter was identified and present during the drug sales; however, she did not testify at trial.
[2] M.R.E. 608(a) comment. Subsection (a) permits the introduction of character evidence of a witness only after his character for veracity has been attacked. A party may not bolster his witness's character; the party can only react in some response to a charge of untruthfulness." M.R.E. 608(a) comment.
[3] "M.R.E. 401. Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401.